STATE EX REL. NEVADA COUNTY v. HICKS.

STATUTES: *Repealing or changing proceedings. Effect on pending suits.*
    An act of the legislature providing that "hereafter" a different pro-
    ceeding in certain causes shall obtain than had obtained under a
    former statute, does not affect pending suits. The word "hereafter"
    makes the act prospective in its operation.

APPEAL from *Hempstead* Circuit Court, in Chancery.
Hon. L. A. BYRNE, Judge.

*U. M. & G. B. Rose* and *Smoote & McRae*, for appellant.

Upon the passage of the act of 1879, disincorporating
counties, and depriving them of the capacity to sue and be
sued, the action of the county against appellees, and the
cross-action of appellees against the county, necessarily
terminated, and all proceedings taken subsequently were
*ex parte* and void. No one has a vested right to any par-
ticular decision. His case must be determined by the law
as it stands at the time of the judgment. *43 Ark., 421; 30
ib., 184; 30 ib., 283.* See, also, *5 Wall., 541; 7 ib., 514; 98
U. S., 398; 101 ib., 533; 9 Haw., 235; 13 ib., 429; 10 ib.,
72; 11 Wall., 88; 9 ib., 567; 15 Fed. Rep., 153.*

The legislature has complete control over counties, and
may create or blot them out at will. *42 Ark., 54; Cooley
Const. Lim., marg. p. 192; 102 U. S., 472; 33 Ark., 497.*

*Sec. 6343 Mansf. Dig.* was not intended as a general law
at all. It was a part of the revised statutes, and designed
to apply only to actions pending at the time of its adop-
tion.

When the county was destroyed by the legislature, it
ceased to exist, and any judgment for or against it was
void. *Mor. on Corps., sec. 660; Taylor on Corps., sec. 435;*

*3 Story, 658; 21 Wall., 615; 8 W. & S., 207; 31 Me., 57; 19 La. Ann., 1; 68 Ill., 348; 123 Mass., 32; 18 Iowa, 469; 13 Ohio, 269.*

The demurrer should have been overruled to that part of the complaint which alleged that since the rendition of the judgment the county officials had discovered that the appellees had purchased a toll-bridge franchise, and held the bridge as their own private property. The basis of their recovery was, that the bridge had been turned over to the county by them, and had been used continuously as a public bridge; and if in point of fact, this statement was false, and the bridge had been held by them as their own private property under the franchise, then their judg-. ment was procured by fraud, and should be set aside.

*Sec. 6343 Mansf. Dig.* is unconstitutional and void. *Mix v. Ill. Cent. R. R., 6 N. E. Rep., 42.*

*A. B. & R. B. Williams,* for appellees.

1. The act of February 27, 1879, does nòt extend to actions then pending. The use of the word "hereafter" shows this, and that the legislature intended to harmonize it with *sec. 6343 of Mansf. Dig.* See as to construction of statutes, *11 Ark., 44; 24 ib., 487.*

This section, 6343, appears in all of our digests, and has passed the scrutiny of the ablest lawyers of the state, and has stood unchallenged for near half a century. *44 Ark., 273.* See also *11 Ark., 44; 41 ib., 149; 15 ib., 555.*

2. As to the requisites for a bill of review, see *26 Ark., 600; 32 ib., 753; 2 Hoff. Chy. Pr., sec. 2.* The matters set up in the bill of review should have been pleaded in the first action. The county knew or could have known the facts, and should have pleaded them.

CATE, Special Judge. In August, 1876, the county court of Nevada county made a contract with appellees to build a county bridge for the sum of $1500, to be built by the first day of November following.

Commissioners examined the bridge on the sixth day of said month and reported the same not according to the specifications of the contract, and the county court, acting on said report, rejected the bridge, and declared the bond given by the contractors for the proper completion of the bridge, forfeited, and directed suit to be brought on it.

This suit was brought on the 27th day of November, 1878, in the circuit court of Hempstead county. For answer, defendants, who are appellees here, stated that the bridge was completed in the time and manner as required by the contract; that it had not been rejected; that the county court had not ordered suit on the bond; that the bridge had not been ordered to be taken down; that it was still standing where it was built, and was in use by the public, etc., and that it was reasonably worth $1300, and asking that this be considered matter of cross-complaint, and that they have judgment for the same. The case was transferred and heard on the equity side of the docket, and on the 3d day of February, 1880, a decree was entered in favor of defendants, in the circuit court, and against the county for $1300. From this decree an appeal was taken to this court, and the decree was affirmed at the May term, 1882, and reported in *38 Ark., p. 557*, and the county of Nevada was ordered to pay said sum of $1300, and proper mandate was issued. Afterwards, on September 6, 1884, the county of Nevada in the name of the state and for its use, filed in the chancery court of Hempstead county, a bill of review, asking that the order and decree made in the circuit and supreme courts, in the original suit be set aside and held for naught. To support

this it is urged: First—That there is newly discovered evidence, and second—That by reason of the act of February 12, 1879, which was passed while the suit was pending, the circuit court had no power or jurisdiction to entertain a claim against a county or render judgment therein. A demurrer was sustained, the bill was dismissed and an appeal was taken to this court.

As to the first proposition, it is stated that about the time the county made its contract with Hicks *et al.*, appellees, to build the county bridge, it also granted a charter to one Grayson to erect a toll-bridge on the same creek, at the same point; that appellees bought said charter of Grayson, and took from him an assignment of his privileges under the same, and have ever since held the bridge as their private property, under Grayson's franchise; that the county prior to the rendition of the original decree had no knowledge of this assignment of Grayson's franchise to appellees, and no reason to suppose it had been done, wherefore they were unable to plead it in bar of appellees' claim.

As to this it seems to be immaterial whether the county had knowledge of the assignment of Grayson's privileges to appellees or not. This was not at issue. The question determined in the original case was the performance or non-performance of a contract to build a public bridge for the county, and has nothing whatever to do with Grayson's right to build a toll bridge. Appellees had a right to acquire as many assignments to build toll bridges as they should choose, and for the purpose of the matter determined in the original suit the county had no need to know anything about it, and if such was the fact it was of no importance whether it was ever discovered or not.

It can be seen, however, that if the appellees undertook to build a county bridge for free public use, and then pro-

State ex rel. Nevada County v. Hicks.

ceeded to hold it as a toll bridge for their own use, and at the same time demand pay for building it, then this would be a proper matter to reply to appellees' counter-claim, and for this purpose it would not be material whether appellees were collecting toll under an assignment to them of a grant to Grayson, or without semblance of authority. They had no right to appropriate a public bridge for their benefit in such a way, and if it was done it must have been known to the county court, for it is difficult to conceive how the county court could conduct this somewhat protracted litigation about a bridge and not know until the matter was determined in the courts that appellees were all the time taking tolls on the same. There is no pretense of such want of knowledge of this material fact, but only an alleged ignorance of his supposed claim of right to take toll under an assignment. This is certainly insufficient to constitute such a showing as to authorize the court to set aside the former proceedings and decree.

As to the act of February 27, 1879, which was passed pending the suit, it is urged with great earnestness by appellants that it has the effect to terminate the whole proceedings; that all steps taken after the passage of the act were void, as it expressly provided that the counties should prosecute their suits in the name of the state, and that all demands against counties should be presented to the county court, and repealed all the sections of the statute providing for bringing suits against counties in the circuit court. *Statutes changing practice. Effect on pending suits.*

It is held in *Green v. Abraham, 43 Ark., 421*, that " the bringing of a suit vests in a party no right to a particular decision. His case must be determined on the law as it stands at the time of the judgment—not at the bringing of the suit; and if, pending an appeal, the law is changed, the appellate court must determine the case under the law

in force at the time of the decision," and this is the language of Judge Cooley in his work on constitutional limitations.

In the case of the *Ins. Co. v. Ritchie, 5 Wall., 541*, an action was brought under a revenue law which was repealed pending the suit, and it was held that the action must fall, the court saying: "It is clear that when the jurisdiction of a cause depends upon a statute, the repeal of the statute takes away the jurisdiction. And it is equally clear that where a jurisdiction conferred by statute is prohibited by a subsequent statute, the prohibition is, so far, a repeal of the statute conferring the jurisdiction."

Numerous other authorities on this subject and in the same direction might be cited, but only one more will be referred to, as it states the rule very clearly and in a way to render it specially applicable here.

In *South Carolina v. Galliard, 101 U. S., 433*, the court says: "It is well settled that if a statute giving special remedy is repealed *without a saving clause in favor of pending suits*, all suits must stop where the repeal finds them. If final relief has not been granted before the repeal went into effect, it cannot be after."

From 1839 to 1879 there are statutes providing that suits by and against counties might be brought in the circuit court, and the manner of bringing and conducting them. The act of February 27, 1879, in its first section provides that "hereafter" a different proceeding will obtain. Now it was obviously the intention of the legislature by the use of the word "hereafter" to make the act purely prospective, and with a saving to suits pending. And this being so the county, having brought its suit in the proper court before the passage of the act, had a right to a final hearing in that court, and the appellees, or defendants, had a right to all their proper defenses. That these defenses

were proper and meritorious has already been determined by this court and is settled, and the act in question was as ineffectual to take away their right to defend in the Hempstead circuit court as the right of the county to prosecute its suit.

In further support of this view appellees insist that under section 6343, Mansfield's Digest, the act of February 27, 1879, could not affect a suit pending. In this the question is raised as to whether the legislature can constitutionally limit its own legislative power.

In passing on a somewhat similar statute the Supreme Court of Illinois holds that "it is not competent for the legislature to limit its own legislative powers by prescribing rules intended to govern the method of repealing and amending statutes. The power to repeal and amend statutes is vested in the legislature by the constitution, and the legislature cannot deprive itself of the right to exercise this power by prescribing rules as to the method in which it shall be done." *Mix v. Ill. Cen. Rd. Co. (Syllabus), 6 North Eastern Rep., p. 42.*

In *Files v. Fuller, 44 Ark., 273,* EAKIN, J., in passing upon this statute, says: "We have an old statute of 1837, which has passed unchallenged through the portals of all subsequent constitutions. It provides that no action, plea, prosecution or proceeding, civil or criminal, pending at the time any statutory provision shall be repealed, shall be affected by such repeal; but the same shall proceed in all respects as if such statutory provision had not been repealed."

"This statute has very little importance save in hermeneutics, and has been rarely invoked, for no legislature has power to prescribe to the courts rules of interpretation, or to fix for future legislatures any limits of power as to the effect of their action. Any subsequent legislature

might make its repealing action operate in pending suits as effectually as if no such statute existed, and the courts are quite free yet to consider what the subsequent legislature did in fact intend or had power to do. Still it has kept its place on the statute books, and it is persuasive, at least, that subsequent legislatures meant to keep in harmony with it, and in their legislation supposed it would go without saying, that when a repeal was made, all rights in suits pending under the old statutes would be preserved."

This construction of the statute by Justice EAKIN seems to be most sound and reasonable, inasmuch as, instead of fixing an inflexible rule in constructing such acts, it holds that " courts are quite free yet to consider what the subsequent legislature did, in fact, intend or have power to do."

And in considering these statutes section 6343, Mansfield's Digest, seems to be a general law, and the act of February 27, 1879, by its terms evidences an intention on the part of the legislature to keep in harmony with the existing law, and to except from the operation actions and pleas pending at the time of its passage.

Accordingly there was no error in the court below sustaining the demurrer, and it is affirmed.