(May 6, 1909.)

H. L. TATUM and J. J. BOWEN, Copartners as TATUM & BOWEN, Appellants, v. COAST LUMBER COMPANY, Respondent.

[101 Pac. 957.]

ACTION ON CONTRACT—MISTAKE IN CONTRACT—MUTUALITY OF MISTAKE —VALIDITY OF CONTRACT.

1. A unilateral mistake in the making of a contract of which the other contracting party is entirely ignorant and to which he in no way contributes will not affect the contract or afford grounds for its avoidance or rescission, unless it be such a mistake as goes to the substance of the contract itself.

2. Where a prospective purchaser of goods submits a list of the goods he proposes to purchase, and asks the price for which the owner will sell such articles, and the vendor submits a bid in the aggregate for the entire list of goods without setting out the price of each article, and the purchaser accepts the proposition and orders the goods shipped, and thereafter receives and accepts the goods, the vendor will not be allowed to recover a greater sum than that called for by his bid on the grounds that he made an error or mistake in computing the various items, and for that reason submitted his bid greatly below the price for which the goods should have sold.

3. The negligence and mistake of the vendor of property in computing the prices of various articles he is selling, or in computing the profits he expects to or should realize on the goods, is no ground for avoidance or rescission of the contract where the other party acted in good faith and is free from any knowledge of the mistake or of any fraud or deception in the transaction.

(Syllabus by the court.)

APPEAL from the District Court of the Third Judicial District, for the County of Ada. Hon. Fremont Wood, Judge.

Action by plaintiff to recover a balance on contract for sale of goods. Judgment for the defendant and plaintiff appeals. Judgment *affirmed.*

Kroeger & Williams, for Appellants.

A mutual assent is necessary to the formation of a contract, and it follows that an error or mistake of facts, which goes to the essence of the agreement, and therefore excludes such assent, prevents the formation of the contract, since each party is really agreeing to something different, notwithstanding the apparent mutual assent. (*Mummenhoff v. Randall,* 19 Ind. App. 44, 49 N. E. 40.) The proposition of one party must always be made by an acceptance of the other which corresponds with it, which cannot be the case when the proposition is misunderstood by one of the parties. (*Hartford R. R. Co. v. Jackson,* 24 Conn. 514, 63 Am. Dec. 177; *Rowland v. New York etc. R. R. Co.,* 61 Conn. 103, 29 Am. St. 175, 23 Atl. 755.)

To constitute a contract in fact the two parties must concurrently assent to exactly the same thing at the same instant of time; so if one consent to a thing and another to a thing in any degree different, by reason of which their wills do not at any instant completely coincide, they do not enter into a contract. (*Gulf etc. Ry. Co. v. Dawson* (Tex. Civ. App.), 24 S. W. 566; *Davis v. Bush,* 28 Mich. 435; *Rogers v. Collier,* 2 Bail. (S. C.) 581, 23 Am. Dec. 153; 2 Starkie on Evidence, 640; Bishop on Contracts, sec. 313; *Rupley v. Daggett,* 74 Ill. 351.)

It is essential to every agreement that the parties to it should have consented to the same subject matter in the same sense; they must have contracted *ad idem.* Hence where one person offers a thing and the other accepts it, and the parties have in mind a different thing, there can be no agreement. (9 Cyc. 398 et seq.; *Rovegno v. Defferari,* 40 Cal. 459; *Sprague v. Edwards,* 48 Cal. 239; *Fullerton v. Dalton,* 58 Barb. 236.) The intention of the parties to a contract should be ascertained by the court, if possible, and such intention given effect. (*Porter v. Allen,* 8 Ida. 358, 69 Pac. 105, 236; *Givens v. Keeney,* 7 Ida. 335, 63 Pac. 110; *Winters v. Swift,* 2 Ida. 61, 3 Pac. 15.)

A. A. Fraser, for Respondent.

"The party alleging mistake in a written contract must show exactly in what it consists and the correction that should be made. The evidence must be such as to leave no reasonable doubt in the mind of the court as to either of these points; the mistake must be mutual and common to both parties. It must appear that both have done what neither intended." (*Hearne v. Ins. Co.,* 20 Wall. 490, 22 L. ed. 395; *Houser v. Austin,* 2 Ida. 204, 10 Pac. 37; *Cox v. Woods,* 67 Cal. 317, 7 Pac. 722; *Mead v. Winchester F. Ins. Co.,* 64 N. Y. 453; *Wachendorf v. Lanchester,* 61 Iowa, 509, 14 N. W. 316, 16 N. W. 533; *Fowler v. Adams,* 13 Wis. 459; 2 Pom. Eq. Jur. 859; 1 Story Eq. Jur. 152-157; *Bower v. Bowser,* 49 Or. 182, 88 Pac. 1104; *Stoll v. Nagel,* 15 Wyo. 86, 86 Pac. 26; *Grymes v. Sanders,* 93 U. S. 798, 23 L. ed. 798.)

"A mistake of one of the parties only in the expression of his agreement or as to the subject matter, not known to the other, does not affect its binding force, and is no ground for its rescission even in equity." (9 Cyc. 394; *Crane v. McCormick,* 92 Cal. 176, 28 Pac. 222; 15 Am. & Eng. Enc. Law, 628; 2 Add. Cont., p. 1182; *Steinmeyer v. Schroppel,* 226 Ill. 9, 117 Am. St. 224, 10 L. R. A., N. S., 114, 80 N. E. 564; *Crilly v. Board of Education,* 54 Ill. App. 371; *Douglas v. Grant,* 12 Ill. App. 273; *Brown v. Levy,* 29 Tex. Civ. App. 389, 69 S. W. 255.)

AILSHIE, J.—This action was instituted by the appellants for the recovery of $1,060, claimed to be due them as a balance for certain merchandise sold to the respondent between October 10th and November 17, 1905. The defendant denied the indebtedness and the case was tried to the court without a jury, and findings and judgment were entered in favor of the defendant. The appeal is from the judgment and an order denying a motion for a new trial. This action is the result of a dispute which arose between the appellants and respondent over the purchase of a bill of machinery. The facts essential to the determination of this case are as follows:

In the month of October, 1905, the appellants furnished respondent with a list of tools and machinery for a planing-mill and sash and door factory, which they proposed to sell to respondent for $2,825 f. o. b. Portland. The respondent on the same day appears to have accepted the offer. Later, and on November 3d, respondent's manager, George Clithero, wrote appellants at Portland ordering a 48-inch three drum sander at $1,250 f. o. b. Portland, to come with the car of machinery previously ordered. Clithero, as manager for the respondent company, seems to have been figuring on the purchase and installation of machinery for operating a mill and factory in Boise, and subsequent to the previous orders appears to have concluded that they would need still other machinery, and that it would also be necessary to change the previous order as to some of the machinery, getting different and heavier material in some instances. He accordingly prepared a list of the tools, machinery and furnishings his company wanted to purchase, and went to Portland and called on the appellants' salesman at their place of business, and submitted the complete list, which included most of the articles and machinery covered by the previous orders and such changes as were desired. This list contained some fifty or sixty items. He requested the appellants' salesman to go over the list and give him the total price for which appellants would sell respondent the entire bill of goods. On the afternoon of November 17th, appellants'

salesman, one Mark Colby, delivered to Clithero a communication, which is as follows, omitting the list of goods scheduled in the letter:

"Nov. 17, 1905.

"Coast Lumber Co., George Clithero, Mgr., Boise, Idaho.

"Dear Sir: Your order for machines and extras as it now stands with us comprises the following list of machinery:
. . . .

"The above equipment totals approximately $5,134.80. On our original contract we estimated and charged you for 24,000 lbs. of freight to bring same f. o. b. Boise. The additions which you have just made will bring the weight approximately 40,000 lbs. but whatever the exact weight is in excess of the 24,000 we will charge you at the carload rate. We would suggest that you pay the freight at your end of the line as goods arrive, thus obviating any chance of a misunderstanding, and when it comes to settlement that you charge us back with the 24,000 lbs. of freight at 79c. Any points that are not entirely clear to you should be glad to have you take same up at any time.

"Yours truly,

"TATUM & BOWEN.

"By M. R. C."

Clithero testifies that he asked Colby at the time what he meant by the use of the word "approximately," and Colby answered: "The only thing we cannot figure out is the size of the pulleys." That he thereupon asked Colby: "How much difference will that make?" and Colby answered: "From three to four dollars." Clithero thereupon replied: "That is all right; you can ship these goods." Clithero returned to Boise, and on December 13th received one carload of machinery. The other carload was received in Boise on December 28th. On December 18th, five days after the first carload of machinery reached Boise, Clithero received several invoices from Tatum & Bowen, aggregating about the sum of $6,194.84. Clithero testifies that he did not take the time to figure up these several invoices to see if they corresponded with his contract until sometime from

the 21st to the 30th of December. However, he evidently computed this on or before December 23d, because on that date Clithero wrote Tatum & Bowen as follows:

"Boise, Idaho, Dec. 23, 1905.

"Messrs. Tatum & Bowen, Portland, Oregon.

"Dear Sirs:

"Please find our check for..............$3,890.09
"Discount at 3 per cent................. 120.51
"Freight on 24,000 lbs. at 79c.......... 189.60

4,200.00

"Total credit to our account, $4,200.00. There seems to be an overcharge in your invoice. Please refer to your estimate of November 17th. As soon as you get this straightened out and the balance of machinery, etc., here we will send you balance of our account.

"GEO. CLITHERO, Mgr."

It would seem from the reply of Tatum & Bowen under date of December 27th that Clithero or his company must have also written appellants on December 22d. The reply of December 27th is as follows:

"Portland, Oregon, Dec. 27, 1905.

"Coast Lum. Co., Boise, Idaho.

"Gentlemen: We beg to acknowledge receipt of your letter of the 22d and 23d inst., and have placed to your credit the several items aggregating $4,200.00.

"In regard to our estimate of November 17th would state that we have looked the same over and it is evident that our Mr. Colby did not get all the items, or what we think by reference to his papers which he has kept, is that he made an error in his addition when making up the approximate price as per ours of the 17th of November. If you will refer to our invoices you will find that we have not charged you with anything that does not belong there and that the prices charged are those agreed upon and quoted you. The invoices were made from the original entries and therefore cannot be wrong. We think if you will look everything over you will see that our invoices were correct. Our letter of

the 17th of November in any event was only an approxima-
tion.

"As regards the rate, the correct rate to Boise is 85c.
79c. is the rate Mr. Colby obtained to Caldwell and we think
he must have made an error as he told you the rate to Boise
was the latter amount.

"Yours truly,
"TATUM & BOWEN.
"By E.

"F. F. S."

In answer to Tatum & Bowen's letter of December 27th,
Clithero wrote them on December 30th in part as follows:

"Boise, Idaho, Dec. 30, 1905.
"Tatum & Bowen, Portland, Oregon.

"Dear Sirs: In your letter of the 27th inst. you state that
if we will refer to your invoices, we will find that you have
not charged us for anything that does not belong there, and
at prices agreed and quoted us. Now the fact is that you
never quoted us on but two or three machines in the entire
purchase. In the first bill sold to us by Mr. Colby, I did
not know the price of a single machine. I asked Mr. Colby
to carry out the prices but he refused to do so and said
that he was making me better prices than he would if he
had to itemize the bill. . . . . "

The letter from Tatum & Bowen of Dec. 27th appears to
have been written by someone other than Colby. Later all
the papers and correspondence appear to have been referred
to Colby, and on January 2, 1906, he wrote Mr. Clithero per-
sonally a letter of considerable length, parts of which are
as follows:

"Portland, Ore., Jan. 2, 1906.
"Mr. George Clithero, Manager Coast Lum. Co., Boise, Idaho.

"Dear Sir: The firm has turned over to me the letters and
papers pertaining to the goods which the writer sold you in
an effort to trace out the very unfortunate mistake which
was evidently made in closing with you the time you were
in Portland. It of course goes without saying that we on
both sides did everything possible to have the matter thor-

oughly understood, and so many of the items were changed or altered and heavier machines substituted to meet conditions which arose after the original contract was signed that we used special pains to keep the matter straight. We have taken all the papers pertaining to this subject which fortunately we had kept from my first estimates to you at Boise down to our final signing at Portland. We have gone over these papers carefully from beginning to end and find that the mistake lies undoubtedly in the fact that the writer made mistake in his addition, not carrying a certain figure to the next column when we should. . . . . ''

The appellants have prosecuted this action on the theory that their salesman, Colby, made a mistake in computing the prices of the various articles included in the bill, and that instead of being $5,134.80, it should have been $6,194.80, and that on account of such mistake the minds of the contracting parties never met on the contract price, and that respondent was therefore liable to pay appellants the price at which the machinery was invoiced to it. Respondent, on the contrary, contends that an express contract was entered into whereby the bill of goods was to be sold to it for approximately $5,431.84, and that it was thoroughly understood that the word "approximately" as used in this contract should not make a difference or variance of more than "three or four dollars." It is also worthy of note at this point to observe that Colby does not absolutely deny stating to Clithero that by the use of the word "approximately" he did not mean that there would be a difference of more than "three or four dollars." He testifies, however, that he does not remember making such a statement. Counsel for appellants, in support of their contention, place special reliance on *Mummenhoff v. Randall,* 19 Ind. App. 44, 49 N. E. 40, *Mitchell v. McBee,* 1 McMull. (S. C.) 267, 36 Am. Dec. 264, and *Rupley v. Daggett,* 74 Ill. 351.

In the first case above cited, Randall wrote Mummenhoff Co. from Oxford, Michigan, quoting prices on vegetables, and, among other things, quoted potatoes at fifty-five cents per bushel. The stenographer, however, who took the dictation,

quoted the price of potatoes at thirty-five cents instead of fifty-five cents. On receipt of the letter, Mummenhoff Co. wired Randall to ship two or three cars of potatoes at price quoted. Randall accordingly shipped the potatoes and sent invoice at fifty-five cents. The invoice reached the purchaser before he received the potatoes. The purchaser immediately wired Randall as follows: "You offered potatoes at thirty-five cents; billed at fifty-five cents; explain." Up to this time Randall had never seen the letter after it had been written by the stenographer and did not know that the price had been quoted at thirty-five cents instead of fifty-five cents. After looking the matter up in the copy-book, he immediately wired Mummenhoff Co. as follows: "My quotation was fifty-five cents delivered; potatoes cost forty-five cents here. Second car on road. If cannot use as billed will give directions." Notwithstanding these telegrams and this information, Mummenhoff Co. received and accepted the potatoes and then refused to pay more than thirty-five cents. The supreme court of Indiana held that Randall had never been apprised of the mistake made by the stenographer and never in fact knew himself that any offer or proposition had been made to sell the potatoes at thirty-five cents, and that the purchaser was so advised before receiving and accepting the potatoes, and that he was therefore liable to pay the price as Randall had dictated to his stenographer and had notified them by wire.

In *Mitchell v. McBee*, a firm in South Carolina ordered goods from a New York firm. When the goods came they were not all of the class or kind of goods that had been ordered. At the time of the receipt of the goods, the purchasers also received an invoice stating the prices charged for the articles. The purchasers received and accepted the goods, and the court held that having received the goods and appropriated them to their own use they would be liable for the goods at the invoice price.

In *Rupley v. Daggett*, the parties were attempting to make a trade for a horse. The owner of the horse asked the purchaser $165 for the horse. The purchaser understood him to

make the price $65. He did not take the animal away at that time, but a few days later returned, and the owner of the horse was absent, but he took the animal, and someone present informed him that there was evidently some mistake as the owner would not sell the animal for $65. He took the animal away with him. As soon as the owner of the animal learned that the would-be purchaser only intended to 'pay $65 for the animal, he commenced an action in replevin to recover him on the ground that there had been no meeting of the minds of the contracting parties and consequently no sale. The supreme court of Illinois held with the plaintiff to the effect that there was no meeting of the minds of the contracting parties and that no sale was ever consummated. It will at once be seen that these cases are not applicable to the facts of the case at bar.

In the Indiana and Illinois cases the owners of the property never in fact quoted the price to the purchasers for which they sought to hold the goods. In the one case the stenographer had misquoted the price to the purchaser, and the purchaser was so informed before receiving or accepting the goods. To have received them after being informed of such mistake and retained them without paying the true price quoted would have been a fraud on the vendor. In the other case, the owner of the horse actually quoted the price at $165, and he was not responsible for the vendee's misunderstanding, or not wanting to understand, the price as really given.

In the South Carolina case the purchasers received and accepted the goods, and appropriated them to their own use, although they were not the goods ordered. They were held bound by the invoice price, the court saying that they might have returned the goods if they did not want them at the invoice price, but that they would not be allowed to compel the owner to part with his goods at a price unsatisfactory to him.

In the case at bar the appellants' salesman, who stood in the place of appellants themselves, actually quoted the price to respondent, and the contract was made on the figures

thus given. There is no pretense made that the respondent was aware that any mistake in calculation had been made, or that he had any reason to suspect that any mistake or error had been committed on the part of the appellants, nor had respondent in any way contributed to the cause which led to such mistake, if, indeed, a mistake was really made.

This action is not prosecuted for the correction of a mistake in a contract, but is rather brought on the theory that the contract was not actually made, and that the goods were rather sold by appellants and received by respondent on general invoice. The evidence, however, shows that they did make a contract, or at least attempted to make one, and the decisive question to be determined here is: Did their minds meet on the price of this order of goods? For the purposes of this case it may be conceded that a mistake was made by appellants' salesman in computing the prices of the several items, and that had he discovered the mistake at the time, he would have quoted a higher price than the price given on November 17th. It must also be admitted that the respondent was not aware of any mistake, and had no reason whatever to suppose that any error or mistake had been made by the appellants or their salesman.

Prof. Lawson, in his article on contracts, 9 Cyc. 394, says:

"A mistake of one of the parties only in the expression of his agreement, or as to the subject matter not known to the other, does not affect its binding force and is no ground for its rescission even in equity, unless it is such a mistake that there is a complete difference in substance between what is supposed to be and what is taken, so as to constitute a failure of consideration."

In *Stienmeyer v. Schroppel*, 226 Ill. 9, 117 Am. St. 224, 80 N. E. 564, 10 L. R. A., N. S., 114, the vendor of lumber in footing up the different items of a bill, made the total $1,446, instead of $1,867, which it would have been had he correctly added the amounts. His bookkeeper copied the list on one of the company bill-heads without giving the prices of each item, and at the bottom of the list wrote the following words: "Above for $1,446." The lumber was

delivered and the purchaser paid the $1,446 and refused to pay any more. The vendor sued for the difference. The court in passing on the matter said:

"A mistake which will justify relief in equity must affect the substance of the contract, and not a mere incident or the inducement for entering into it. The mistake of the appellants did not relate to the subject matter of the contract, its location, identity, or amount, and there was neither belief in the existence of a fact which did not exist or ignorance of any fact material to the contract which did exist. The contract was exactly what each party understood it to be and it expressed what it was intended by each. If it can be set aside on account of the error in adding up the amounts representing the selling price, it could be set aside for a mistake in computing the percentage of profits which appellants intended to make, or on account of a mistake in the cost of the lumber to them, or any other miscalculation on their part."

In *Brown v. Levy,* 29 Tex. Civ. App. 389, 69 S. W. 255, the Texas court of civil appeals held, quite recently, that where a person makes an offer to erect a building for a certain amount, and the other party accepts it, there is a consummated and binding agreement, although the bidder in adding up the items of his estimates made a mistake in the total, and consequently made the bid $10,000 less than it should have been.

*Bonney v. Stoughton,* 122 Ill. 536, 13 N. E. 833, was substantially a similar case, and the court held that the contract was consummated and binding. These cases proceed on the theory that a purchaser has a right to know the price he is expected to pay for an article before accepting it, so that if he considers the price higher than he can afford to pay or than he wants to pay, he may decline to accept it. A purchaser cannot be made to suffer or be held responsible because a vendor has committed an error or mistake in computing the value of his goods or the expected profits to be derived from the sale thereof. A rescission of the contract has sometimes been allowed where the purchaser was informed of the error

and mistake prior to receiving and accepting the goods, and prior to his changing his position and attitude with reference to the contract and property so as to injure or prejudice him. No court, however, so far as we are advised, has ever held a contract void or invalid on account of a unilateral mistake of which the other party was not aware and which did not go to the subject matter of the contract itself. (2 Addison on Contracts, p. 1182; *Crane v. McCormick,* 92 Cal. 176, 28 Pac. 222; *Moffet etc. Co. v. Rochester,* 91 Fed. 28, 33 C. C. A. 319; 15 Am. & Eng. Ency. of Law 628.)

In the latter authority, the text, in dealing with the right of a court of equity to reform a contract on account of such a mistake, says:

"In order that a mistake may come within the cognizance of a court of equity, it must be shown to be: First, material, or the moving cause of the complaining party's action; second, mutual, or shared in by both parties to the transaction; third, unintentional; and, fourth, free from negligence."

Contracts are the deliberate and voluntary obligations of parties capable of contracting, and they must be accorded binding force and effect. Those who enter into them must understand that they have a meaning and that they cannot be lightly tampered with. If a vendor can be heard to come into court and repudiate his contract on the ground that it had never been really consummated, for the reason that he made a mistake in computing the prices of the various articles involved in the transaction, he might with equal reason insist that he had made a mistake in computing the profit he expected to realize out of the transaction. No such proposition can be tolerated. The owner of property is supposed to know what it is worth, and at least know what he is willing to take for his property. The purchaser may likewise exercise his free will and choice as to whether he will purchase property at a given price. After he has received the property, understanding that he is to pay a fixed price for it, he cannot be compelled to pay a different and greater price simply because the vendor was careless or negligent in the transaction of his own business.

The findings and judgment of the trial court in this case are eminently correct. The appellants have failed to make a case. The judgment should be affirmed, and it is so ordered. Costs awarded in favor of respondent.

Sullivan, C. J., and Stewart, J., concur.