Points Decided.

(April 9, 1910.)

## FRANK S. HEATH, Respondent, v. POTLATCH LUMBER COMPANY, a Corporation, Appellant.

[108 Pac. 343.]

;SUFFICIENCY OF EVIDENCE—COMPROMISE AGREEMENT—AUTHORITY TO MAKE—CONSIDERATION—AMENDMENT OF PLEADING.

(Syllabus by the court.)

1. Evidence examined and *held* to support the verdict of the jury.

2. Whether an assistant general manager of a lumber company, in charge of the operation of the company's plant, has authority to make a contract with an injured employee in compromise of damages claimed by such employee, is immaterial if such company ratifies the acts of the assistant general manager in making such compromise agreement, and makes payments in accordance with the terms thereof.

3. Where a claim is made against another in good faith, and the latter denies its liability, and to avoid a lawsuit agrees to pay such claim in consideration that suit will not be brought upon such claim, there is a sufficient consideration to support such compromise agreement.

4. There is sufficient consideration to support a compromise agreement if the claim is made in good faith and is disputed, and in consideration that the claimant forbears to sue in respect to such claim, a promise is made to pay a certain sum of money, and such promise may be enforced in an action at law.

5. It is not error for the trial court to refuse a proffered amendment after the evidence has been concluded, where there is no evidence to support the allegations of such proposed amendment.

6. Where a check is given as a partial payment in accordance with a compromise agreement, the fact that the person giving such check incorporates therein language releasing the payor for all claims and damages, will not operate to release the promisor from complying with the compromise agreement, unless it clearly appears that it was the intention of both parties that such check should be in full payment of all claims and demands whatsoever.

APPEAL from the District Court of the Second Judicial District, for Latah County. Hon. Edgar C. Steele, Judge.

An action to recover upon a compromise agreement.  Judgment for plaintiff.  Defendant appeals.  *Affirmed.*

Geo. M. Ferris, James E. Babb, and A. H. Featherstone, for Appellant.

The defendant cannot be held liable in damages because one of its employees, a managing officer, advises an injured man to go to a hospital to effect a cure and later promises the injured man that the company will pay him wages until he is cured if he will not sue for damages growing out of the assistant manager's poor judgment in recommending a doctor. This was outside the duty of Mr. Laird, and he had no authority to bind his principal.  (*Bohanan v. Boston Main Ry.,* 70 N. H. 526, 49 Atl. 103; *Backman v. Charlestown,* 42 N. H. 125–131; *Flander v. Putney,* 58 N. H. 358; *Hayes v. Colby,* 65 N. H. 192, 18 Atl. 251; *Maxson v. Michigan Cent. Ry. Co.,* 117 Mich. 218, 75 N. W. 459; *Delta Lumber Co. v. Williams,* 43 Mich. 86, 40 N. W. 940; *Nephew v. Michigan Cent. Ry. Co.,* 128 Mich. 599, 87 N. W. 753; *Gamacho v. Engraving Co.,* 14 Misc. Rep. 586, 37 N. Y. Supp. 725; *Chase v. Swift,* 60 Neb. 696, 83 Am. St. 552, 84 N. W. 86; *Demars v. Musser Sauntry Co.,* 37 Minn. 418, 35 N. W. 1.)

Defendant's Exhibit "F," the check with release clause attached, cashed by the plaintiff, has two purposes in the case. It tends to show that there was no agreement of compromise and that the plaintiff's claim was unliquidated.  He does not claim fraud or surprise or even mistake, and he is, therefore, bound by his release.  (*Webber v. Board of Commrs.,* 93 Minn. 320, 101 N. W. 296; *Hillestad v. Lee,* 91 Minn. 335, 97 N. W. 1055; *Nassoiy v. Tomlinson,* 48 N. Y. 326, 51 Am. St. 695, 42 N. E. 715; *Treat v. Price,* 47 Neb. 875, 66 N. W. 834; *Chicago Ry. Co. v. Buckstaff,* 65 Neb. 334, 91 N. W. 426.)

Wm. E. Stillinger, and Forney & Moore, for Respondent.

The compromise of a *bona fide* dispute or controversy constitutes a good consideration for a promise, and such consideration cannot be destroyed or the promise revoked by show-

ing that the promisee in fact had no claim.  (*Vane v. Towle,*
5 Ida. 471, 50 Pac. 1004; *McGlynn v. Scott,* 4 N. D. 18, 58
N. W. 460; *Whelpley v. Stoughton,* 112 Mich. 594, 70 N. W.
1098; *Smith v. Farra,* 21 Or. 395, 28 Pac. 241, 20 L. R. A. 115;
*Morgan v. Hodges,* 89 Mich. 404, 50 N. W. 876, 15 L. R. A.
438; Beach on Contracts, sec. 174 et seq.; 8 Cyc. 509.)

STEWART, J.—The appellant, a corporation, was engaged
in the operation of a sawmill and a lumber manufacturing
plant in the town of Potlatch, in Latah county, state of Idaho.
The respondent was employed by the appellant as a barn man
and engaged in feeding and taking care of the appellant's
stock and cleaning and caring for the barns and stables where
such stock was kept.  On June 22, 1907, and while the re-
spondent was in the employ of the appellant, he was called
to assist one Ira George, a department manager of the busi-
ness of the appellant, who as such had control and manage-
ment of all stables, barns, horses, teams, wagons, etc., used by
the appellant, in raising and assisting a sick horse to his feet;
it appears that the horse was lying on his side in a box-stall
located in one of the barns of the appellant, and said George
requested the respondent to go in between the wall of the box-
stall and the back of the horse and assist in raising the horse
to his feet; that the horse was sick and unable to stand alone,
and that while plaintiff was assisting said George in raising
said horse to his feet said horse fell upon the plaintiff and
injured plaintiff in such manner as to break both bones of his
right leg.

At the time this accident occurred it appears to have been
a rule of the appellant company to require all employees to
pay one dollar a month as a hospital fee, the payment of which
entitled the employee to hospital services in case of sickness
or injury, in either a hospital located in Palouse, Washington,
and conducted by one E. T. Hein, or in a hospital at Moscow,
Idaho, conducted by one Charles L. Gritman; that appellant
company had collected and withheld from the moneys and
wages due the respondent for the months of March, April,
May and June, 1907, one dollar for each month as a hospital

fee, and issued to the respondent a card on the Gritman Hospital at Moscow, Idaho, and that such card was in full force and effect at the time of the accident; that after the accident respondent requested that he be taken to the hospital of Gritman at Moscow but was urged by A. W. Laird, the assistant general manager of the appellant company, to go to the hospital of E. T. Hein at Palouse, and finally consented and was taken to such hospital. He remained at the Hein hospital for several weeks. He was not satisfied at this hospital and complained of the treatment he received, and was returned to his home at Palouse. He complained to Laird that Hein was incompetent and did not give him proper treatment, and that he was not improving as he should, and he felt as though the company had not treated him right in urging him to go to the Hein hospital, and told Laird that he intended to bring an action against the appellant company for damages because of such treatment. He testifies that he made such complaint to Laird, and after having told Laird that he intended to bring an action against the company, Laird told him if he would say nothing about an action he would see that his wages were sent up to him each month. It appears that he had been receiving $2.50 a day as wages, including Sundays. This conversation Laird denies; he does admit that plaintiff made complaint to him of his mistreatment, but denies that the question of suit or action for such treatment was ever mentioned by plaintiff. He testifies that he did tell the plaintiff that he would see that he was taken care of and would send him money when needed; whether Laird agreed to pay him his wages until he was able to go to work again, in consideration that the plaintiff would forego suit, is the foundation for this action.

The plaintiff brought this action to recover the sum of $1,250 claimed to be due him by reason of this agreement. The cause was tried to a jury and a verdict returned in favor of the plaintiff for the sum of $650. A motion for a new trial was denied and this appeal is from the judgment and from the order overruling the motion for a new trial.

It is first contended that the evidence does not support the verdict. In corroboration of the plaintiff's testimony the plaintiff introduced in evidence the following check:

"POTLATCH LUMBER COMPANY.

No. 8063.

Potlatch, Idaho, Aug. 16, 1907.

| | | |
|---|---:|---:|
| Pay to Frank Heath or order in payment in full for labor from date of injury, June 22, '07, to Aug. 1st, 1907, 38 days at $2.50 | | $95.00 |
| Less July rent | $10.70 | |
| 3 loads of wood in August | 4.50 | 15.20 |
| | | $79.80 |

Above Frank Heath hereby releases all claims of whatsoever nature against Potlatch Lumber Company.

Seventy-nine and 80-100 Dollars.

If not correct, return without alteration, stating differences.
                    POTLATCH LUMBER COMPANY,
                                By A. W. LAIRD,
                                Asst. General Manager.

To Potlatch State Bank,
        Potlatch, Idaho."

This check was indorsed by the plaintiff and paid.

It will be seen that the terms of this check tend to support the evidence of the plaintiff to the effect that the defendant would pay him his wages during the time he was unable to work by reason of the injury and that this check was in payment of such wages. Also a second check issued to plaintiff as follows:

"POTLATCH LUMBER COMPANY.

No. 9303.

Potlatch, Idaho, Sept. 30, 1907.

| | | |
|---|---:|---:|
| Pay to F. S. Heath or order in payment of his August time 31 days at $2.50 | | $77.50 |
| Less his August House rent | $10.70 | |
| Less his Sept. House rent | 10.70 | 21.40 |
| | | $56.10 |

In full for all claims for injuries or damages of whatsoever·
nature against the Potlatch Lumber Co.

Fifty-six and 10-100 Dollars.

If not correct, return without alteration, stating differences..

POTLATCH LUMBER COMPANY,

By A. W. LAIRD,

Asst. General Manager.

To Potlatch State Bank,

Potlatch, Idaho.''

Accompanying this check was the following communica--
tion:

"Potlatch, Idaho, Oct. 2nd, 1907.

Mr. Frank S. Heath,

Moscow, Idaho.

Dear Sir: Enclosed find check for $56.10 which is in full
payment for your August time, less house rent for August
and September.

We have been glad to help you out by allowing you time·
from your injury up to September 1st, but feel that we can-
not longer continue the help, as it is contrary to our custom,
to do this.

Trusting you will think this satisfactory, we are,

Yours truly,

POTLATCH LUMBER COMPANY.

By A. W. LAIRD,

Asst. Gen. Mgr.''

This latter check was not cashed by the plaintiff, and was.
returned by him to the defendant.

These remittances, taken in connection with the evidence·
of the plaintiff, we think were sufficient to warrant the jury
in concluding that Laird did agree to pay plaintiff his regular·
wages if the plaintiff would do nothing with reference to an
action against the company for alleged mistreatment received
by him at the hospital, where he went at the request of the·
defendant company.

It is next contended that the appellant company cannot be·
held in damages because one of its employees, the managing·

officer, advises an injured man to go to a hospital to effect a cure and later promises the injured man that the company will pay him his wages until he is cured if he will not sue for damages growing out of the assistant manager's poor judgment in recommending such hospital, for the reason that such act on the part of the assistant manager is outside of his duty as such, and in giving such advice he has no authority to bind his principal.

It appears from the record that A. W. Laird, the person advising the plaintiff and urging that he go to the Hein hospital instead of the Gritman hospital, where he had a hospital card, was an assistant general manager of the business of the appellant company. He was on the ground at the time the accident occurred. He came to the plaintiff after the injury and conversed with him about receiving treatment for such injury, and was the only person speaking or acting for the company in such matter. In addition to this, after the appellant had followed the advice of Laird and the compromise agreement was entered into as claimed by the plaintiff, Laird issued checks to plaintiff in payment of his wages as agreed, signed the company's name to such checks, and the company accepted one of such checks and cashed the same. In other words, all the evidence tends to show authority, and there is no evidence tending to show that Laird did not have authority to make such compromise agreement, but whether he originally had the authority to make the compromise agreement, yet he did make such agreement, and the company ratified the same by approving his acts and paying a check issued by him in the name of the company to carry out such compromise agreement. Under such circumstances we are satisfied that the making of such agreement was fully ratified and approved by the company, and that the company is bound by the acts of its assistant general manager. (*Brighton v. Lake Shore & M. S. Ry. Co.*, 103 Mich. 420, 61 N. W. 550.)

It is also contended that there was no consideration for the compromise agreement, even admitting that such agreement was made, for the reason that the evidence does not show an honest belief by both parties that the plaintiff's claim for

damages was doubtful. In other words, plaintiff contends
that to support a settlement and compromise, both parties
must *bona fide* consider the question a doubtful one and that
the compromise was made to avoid a lawsuit upon a doubt-
ful claim. In the case of *Vane v. Towle,* 5 Ida. 471, 50 Pac.
1004, this court summarized the opinion by stating in the syl-
labus as follows: "While the compromise of a claim asserted
upon the one side, but questioned upon the other, will be
deemed a sufficient consideration to support an agreement to
pay such claim, it is still essential that the claim so asserted
should have some basis upon principles of law or equity."
In *Smith v. Farra,* 21 Or. 395, 28 Pac. 241, 20 L. R. A. 115,
the supreme court of Oregon entered into a very full discus-
sion of this question and said:

"It is not every disputed claim, however, which will sup-
port a compromise, but it must be a claim honestly and in
good faith asserted, concerning which the parties may *bona
fide* and upon reasonable grounds disagree. The compromise
of such a claim in good faith is a good consideration to pay
money in settlement thereof, and when an action is brought
upon such promise it is no defense to say that the claim was
not in fact a valid one, or that the parties were mistaken
either as to the law or the facts. . . . . Nor is it a defense
that the claim could not have been maintained if suit or action
had been brought upon it, or that the parties were mistaken
as to the law; for if it is, then it would follow that contracts
by the parties settling their own disputes would at least be
made to stand or fall according to the opinion of the court
as to how the law would have determined it. 'If, therefore,'
says Logan, J., 'the solemn compromise of the parties is made
to depend on the question whether the parties have so settled
the dispute as the law would have done, then it may be truly
said that a compromise is an unavailing, idle act, which ques-
tions even the power of the parties to bind themselves.' . . . .
The settlement of a controversy is valid and binding, not be-
cause. it is the settlement of a valid claim, but because it is
the settlement of a controversy. And when such settlement

is characterized by good faith, the court will not look into the question of law or fact in dispute between the parties, and determine which is right. All that it needs to know is that there was a controversy between the parties, each claiming in good faith rights in himself against the other and that such controversy has been settled."

In 8 Cyc., page 509, the author cites a large number of cases and announces his conclusion as follows:

"The usual test, however, as to whether a compromise and settlement is supported by a sufficient consideration is held to be not whether the matter in dispute was really doubtful, but whether or not the parties *bona fide* considered it so, and that the compromise of a disputed claim made *bona fide* is upon a sufficient consideration, without regard to whether the claim be in suit or not. The law favors the avoidance or settlement of litigation, and compromises in good faith for such purposes will be sustained as based upon a sufficient consideration, without regard to the merits of the controversy or the character or validity of the claim of the parties, and even though a subsequent judicial decision may show the rights of the parties to have been different from what they at the time supposed." (*McGlynn v. Scott,* 4 N. D. 18, 58 N. W. 460.)

It is disclosed by the record that after the injury the plaintiff desired to be taken to the Gritman hospital, and that he was not taken there but was taken to the Hein hospital because of the urgency of Laird, and that he was dissatisfied from the inception with the treatment given to him at the Hein hospital, and claimed that the company had not treated him right in inducing him to go to the Hein hospital instead of the Gritman hospital, and complained to Laird of such mistreatment, and informed Laird of his intention to bring suit against the company for damages sustained by him because of such mistreatment. Whether the plaintiff in fact could have maintained such action is not the test in determining whether there was a consideration for the compromise agreement. If the plaintiff made his claim in good faith and the defendant company denied its liability, and to avoid a law-

suit agreed to pay the plaintiff his wages as a consideration for the plaintiff's not bringing such suit, then there was sufficient consideration to support such compromise agreement. In such cases it is sufficient if the plaintiff in good faith makes a claim and the defendant disputes such claim, and in consideration of the plaintiff's forbearance to sue in respect to such claim promises to pay plaintiff a certain sum of money. In such case there is a consideration for such promise, and the same may be enforced in an action at law.

In determining the good faith of the plaintiff, in making a claim against the defendant for damages, the jury no doubt very properly took into consideration the fact that the plaintiff was taken to the Hein hospital against his own desire and wish and at the solicitation and urgent request of Laird who acted for the company. This fact, no doubt, also influenced the defendant in entering into the promise to pay the plaintiff his wages until he was able to resume work. The defendant, no doubt, felt responsible for the plaintiff being taken to the Hein hospital, and no doubt felt that if in fact the plaintiff did not receive proper care and attention at such hospital, that the company was in some way responsible because of the fact that the plaintiff went to such hospital at the company's solicitation. When all these facts are considered, we believe the evidence is sufficient to show that there was a consideration to support the compromise agreement sued upon.

At the close of the evidence counsel for appellant asked leave to amend its answer to conform to the proof by making the following allegation: "That the delivery of the check marked 'Exhibit F,' and its acceptance by the plaintiff, is in accord and satisfaction of, and a bar to a recovery in this action." The court denied this application to amend and the ruling is now assigned as error. Exhibit "F" referred to in this proposed amendment is the check of August 16, 1907, heretofore referred to and set out in full in this opinion. The contention of the appellant, that this check was a receipt and satisfaction of any and all claims the plaintiff might have against the defendant company, is based upon the following

language contained in such receipt, "Above Frank Heath hereby releases all claims of whatsoever nature against Potlatch Lumber Company."

Whether this proposed amendment would have been sufficient as a plea in accord and satisfaction may be seriously doubted, but whether sufficient or not, the only evidence which would in any way tend to support such plea was the receipt itself, and this was offered by the plaintiff; and having been offered by the plaintiff, if it established the fact that the claim for which plaintiff's action was instituted had been settled and paid, the plaintiff could not have recovered a judgment even though such plea had not been interposed, and the defendant was in no way prejudiced by reason of the court's refusal to permit such amendment to be made. We are satisfied, however, that the evidence clearly shows that it was not the intention of either the plaintiff or the defendant that this receipt should operate as a receipt in full for any claim for damages made by the plaintiff against the defendant.

According to the contention of the defendant, no payment was made on account of any damages; the payment covered by this check was rather a gratuitous gift to the plaintiff because of his need, and was not compensation for services or in lieu of any damages claimed; and upon the other hand, if a compromise agreement was made as claimed by the plaintiff, and this check was given for the purpose of carrying out such compromise agreement, then the release clause in the check would not preclude the plaintiff from recovering the amount fixed by the compromise agreement, especially when the defendant made default in carrying out its part of such agreement. In other words, if a compromise agreement was made as claimed by the plaintiff, and the defendant company made default in carrying out its part of such agreement, then the fact that the defendant wrote the release clause in the check given as a payment upon such compromise agreement would not operate to discharge the plaintiff's claim as agreed upon by such compromise agreement.

It was apparent that the defendant company did not consider the language of this check to be a release of any claim

of the plaintiff against the defendant company, for on September 30th the defendant company sent to the plaintiff another check for wages, which contained a similar provision; and if it had been the intention of the defendant company in delivering the check of August 16th, and its acceptance by the plaintiff, that the same should operate as a release of all claims against the defendant for damages, then there would have been no reason and no consideration for the check of September 30th.

While it is true, as a proposition of law, that where payment is made upon an unliquidated claim for an amount less than that claimed, upon condition that the amount so paid is to be in satisfaction of said claim as a whole and the acceptance of the same constitutes an accord and satisfaction, yet this principle of law has no application whatever to the facts of this case, for, as the evidence shows, the payment of August 16th was made for an amount agreed upon by the parties as a partial payment, to be continued monthly until the plaintiff was able to resume work, and was not made or accepted in satisfaction of any claim made by the plaintiff for damages. In such case the principles of law applicable to accord and satisfaction do not govern. (1 Cyc. 305.)

Judgment *affirmed.* Costs awarded to *respondent.*

Sullivan, C. J., and Ailshie, J., concur.