Argued February 21, affirmed March 13, 1917.

# JOHN WILSON ESTATE CO. *v.* DAMMEIER INV. CO.

(163 Pac. 590.)

**Compromise and Settlement—Consideration.**

 1.  The parties *bona fide* considering a claim between them doubtful, its compromise cannot be attacked on the ground of invalidity of the claim.

From Multnomah:  Henry E. McGinn, Judge.

Department 1.   Statement by Mr. Justice Benson.

This is an action upon a promissory note.  The complaint sets out the note with allegations of its execution and delivery to the Goodyear Shoe Company and its assignment to plaintiff before maturity for a valuable consideration.  The sole defense is a want of consideration.  From a verdict and judgment for plaintiff, defendants appeal.                    Affirmed.

For appellants there was a brief and an oral argument by *Mr. Ralph R. Duniway*.

For respondent there was a brief over the name of *Messrs. Flegel, Reynolds & Flegel,* with an oral argument by *Mr. John W. Reynolds*.

Mr. Justice Benson delivered the opinion of the court.

The history of the transactions which culminated in the execution and delivery of the promissory note in question appears to be about as follows:  In November, 1913, the Goodyear Shoe Company being the lessee of certain business property in Portland from the owner, John Wilson Estate Company, sublet the same to the

Dammeier Investment Company for a term of five years and four months. This sublease contained the following clause:

"This lease is made by the lessor and accepted by the lessee, subject to the right of occupancy by the present tenants in the building upon the said leased premises, and also subject to the lease between the lessor, bearing date the 9th day of February, 1909, a copy of which lease is attached hereto and made a part hereof, and subject to all of the terms and conditions of a certain lease bearing date of the 22d day of November, 1913, by and between John Wilson Estate Company, a corporation, and the lessor, a copy of which lease is attached hereto and made a part hereof."

The lease last referred to in the above paragraph contained the following clause:

"It is further understood and agreed that a portion of the easterly 15 feet of said lot 7 is now being occupied by subtenants under a certain lease of H. Meister, and that they have no written lease therefor, and that lessee herein assumes all responsibility regarding their use and occupation of the premises, and accepts this lease subject thereto."

Contemporaneously with the execution and delivery of the lease in question, the defendant the Dammeier Investment Company executed and delivered to the Goodyear Shoe Company a bond in the sum of $5,000 which was signed by defendant McCalman as surety, conditioned for the faithful performance by the lessee of its obligations under the lease, including the payment of rent in accordance with the terms thereof.

The Dammeier Investment Company of which McCalman was president and Dammeier secretary, entered into possession of the building and paid the accrued rent up to March 27, 1914, at which time the rent by the terms of the lease was increased from $350 to

$550 a month, but thereafter made no payments whatever.   The Goodyear Shoe Company, by its attorney, was pressing them for payment of the rent and as they were unable to secure tenants for the vacant portions of the building they were desirous of being relieved from their obligations under the lease.   After about a month of negotiation they reached an agreement with Mr. Flegel, attorney for the Goodyear Shoe Company, whereby it was agreed that upon payment of $5,000 by them the lease and the bond would be canceled and further liability upon the part of the lessee be ended.   In pursuance of this agreement McCalman gave Flegel his check for $1,000 and two promissory notes, one being for $1,000 payable November 5, 1914, and one for $3,000 payable May 5, 1915, the latter being the one sued upon in this action.   At the time these notes were given Mr. Flegel gave McCalman a receipt which reads as follows:

"Portland, Oregon, May 18th, 1914.
"Received from Adrian McCalman check for $1000, endorsed to the Goodyear Shoe Company, and promissory note dated May 5th, 1914, payable November 5th, 1914, for $1,000; and promissory note dated May 5th, 1914, payable May 5th, 1915, for $3000.00,—said papers being received in full settlement and compromise of lease and bond between The Goodyear Shoe Company and Dammeier Investment Company, the bond of which was signed by Adrian McCalman, with the understanding and agreement that if the Dammeier Investment Company shall within ten (10) days from this date— that is to say on or before the 28th day of May, 1914 —pay up all delinquencies under the lease aforesaid, that the said $1000.00 now received will be applied upon such delinquencies and the notes will be surrendered for cancellation, and the bond and lease reinstated the same as if this memorandum had not been executed; but if said payments are not made within said time, then the lease and bond will be cancelled and surren-

dered to the Dammeier Investment Company and Adrian McCalman. During the said period of ten days, I will hold the said notes in my possession in escrow but the check shall be delivered at once to the Goodyear Shoe Company.

"It is understood that this delay in closing the transaction is on account of negotiations now pending between Dammeier Investment Company and the Jones Market Company to lease the premises, and the Dammeier Investment Company and Adrian McCalman agree to notify me immediately that the negotiations are off between them and the Jones Market, and authorize me to deliver the note and surrender premises without further delay."

The facts thus far recited are uncontradicted in the evidence.

Defendants introduced evidence whereby they sought to establish the fact that they were unable to secure possession of the easterly 15 feet of the lot referred to in the lease as being in the possession of subtenants, and also that plaintiff's assignor interfered with their possession of the property by notifying one of the subtenants not to pay rent to defendants, and by collecting some of the rentals.

All of the defendant's assignments of error attack the rulings of the trial court and its refusal to give certain requested instructions in regard to such evidence. At the conclusion of the taking of testimony both parties moved for a directed verdict and both motions were denied.

The view which we entertain as to the doctrine which should control in this case renders it unnecessary for us to consider any other assignment than defendant's motion for a directed verdict. In *Smith* v. *Farra,* 21 Or. 395, 401 (28 Pac. 241, 20 L. R. A. 115), Mr. Justice Bean speaking for the court, discusses fully and

clearly the effect of an agreement for the compromise of a doubtful claim, and in that opinion he says:

" 'If the requisites of good faith exist,' says Mr. Pomeroy, 'it is not necessary that the dispute should be concerning a question really doubtful, if the parties *bona fide* consider it so; it is enough that there is a question between them to be settled by their compromise.' (Pom. Eq. § 850.) And 'no investigation into the character or value of the different claims submitted,' says Mr. Parsons, 'will be entered into for the purpose of setting aside a compromise, it being sufficient, if the parties entering into the compromise, thought, at the time, that there was a dispute between them.' (1 Parsons Con. (7 Ed.) 439.) It is not every disputed claim however, which will support a compromise, but it must be a claim honestly and in good faith asserted, concerning which the parties may *bona fide*, and upon reasonable grounds, disagree. The compromise of such a claim in good faith, is a good consideration to pay money in settlement thereof, and when an action is brought upon such promise, it is no defense to say that the claim was not in fact a valid one, or that the parties were mistaken either as to the law or the facts. (*Stewart* v. *Ahrenfeldt,* 4 Denio, 189; *Crand* v. *Hunter,* 28 N. Y. 389; *White* v. *Hoyt,* 73 N. Y. 505; *Griswold* v. *Wright,* 61 Wis. 195 (21 N. W. 44); *Brooks* v. *Holt,* 36 Kan. 697 (14 Pac. 236); *Flanagan* v. *Kilcome,* 58 N. H. 443; *Wehrum* v. *Kuhn,* 61 N. Y. 623.)

"Nor is it a defense, that the claim could not have been maintained if suit or action had been brought upon it or that the parties were mistaken as to the law; for if it is, then it would follow that contracts by the parties settling their own disputes, would at least be made to stand or fall, according to the opinion of the court as to how the law would have determined it. 'If, therefore,' says Logan, J., 'the solemn compromise of the parties be made to depend on the question, whether the parties have so settled the dispute, as the law would have done, then it may be truly said that a compromise is an unavailing idle act, which questions even the

power of the parties to bind themselves. (*Fisher* v. *May,* 2 Bibb (Ky.), 448, 5 Am. Dec. 626.)' "

The law as here declared has been cited with approval and reiterated by this court many times since then and is no longer open to question. In the case at bar there can be no doubt whatever that there was a doubtful claim existing between the parties for there is no evidence to the contrary nor is there a suggestion in the testimony of any bad faith in the negotiations resulting in the compromise. The consequence is that all the evidence attacking the validity of plaintiff's claim was irrelevant and the trial court would have been fully justified in directing the particular verdict which the jury subsequently returned. The judgment is affirmed.                                          Affirmed.

Mr. Chief Justice McBride, Mr. Justice Burnett and Mr. Justice Harris concur.