(No. 6189.   July 17, 1935.)

A. L. MORAN, Respondent, v. H. B. COPEMAN, Appellant.

[47 Pac. (2d) 920.]

Reed & Reed and C. H. Potts, for Appellant.

Whitla & Knudson and Kenneth K. Branson, for Respondent.

BUDGE, J.—Respondent prosecuted this case upon two separate causes of action, the first seeking recovery of $644 for cutting, piling and burning brush under a contract with appellant. Since appellant has assigned no error relating to the first cause of action there is nothing to consider with relation thereto.

The second cause of action stated in the second amended complaint is based upon an alleged compromise and settlement between appellant and a third party, Ray Thomas, under a written contract for logging the timber on certain lands belonging to appellant and a third party, and an assignment by said Ray Thomas to respondent of all his interest in the moneys due under said contract. The compromise agreement is alleged in the second amended complaint as follows:

"That on or about the 15th day of Nov. 1929, the defendant and Ray Thomas met and agreed to settle their account at that time. That the said Ray Thomas claimed a large amount of money to be due under said contract and that the defendant claimed to have accepted orders covering a large part of the money claimed due thereunder. That the defendant and Ray Thomas agreed to compromise the matter and that the defendant agreed to pay said orders and to further pay the said Ray Thomas the sum of $1004.75 in full settlement of the delinquent payments and the further sum of $2099.05 in full settlement of moneys which had been held back from the monthly payments and that Ray Thomas agreed to accept said sums. That these sums were to be paid in addition to the orders given by the said Ray Thomas and accepted by the defendant."

Appellant's answer to the second cause of action of the second amended complaint consisted of a general denial of all the allegations and an affirmative defense to the effect that appellant mistakenly believed that the said Ray Thomas had money coming to him under said written contract but

that two days later appellant discovered his mistake and so notified the said Ray Thomas, and that appellant paid the said Ray Thomas all moneys that he had coming to him under and by virtue of said contract, and, in fact, had overpaid him.

The cause was tried before the court and a jury and resulted in a verdict and judgment for respondent. A motion for a new trial was made by appellant which was overruled and this appeal is prosecuted from the judgment and from the order overruling the motion for new trial.

Appellant assigns and relies upon 12 assignments of error, all of which are discussed in the briefs as presenting one question,—the principal ground urged for a reversal of the judgment,—namely, that by the rulings of the trial judge on the admission of evidence appellant was denied and deprived of the right to present a legal defense to respondent's claim, namely, that there was no indebtedness owing from appellant to respondent's assignor, Ray Thomas, at the time of the alleged agreement of compromise and settlement, and that such agreement was based on a mistake as to the existence of such indebtedness. From the record it appears that, there being a difference between appellant and Thomas, they went over the books together and arrived at the settlement or compromise agreement. Appellant sought to show by the books themselves, as well as by one Shepperd, an accountant who audited the books, that as a matter of fact the books disclosed, and in truth and fact, appellant was not indebted to Ray Thomas in any amount, but that, on the contrary, Thomas was indebted to appellant. The court refused to permit appellant to cross-examine the witness Ray Thomas as to any mistake in determining what the books actually disclosed, or that he had received notice of the mistake; refused to permit the introduction in evidence of the books containing the account; refused to permit appellant to testify that the figures in his account as kept in his books, when totaled on an adding machine by an accountant selected by Ray Thomas, and in the presence of appellant and Thomas, showed a balance owing by Thomas to appel-

lant; refused to permit appellant to testify that when Mr. Shepperd totaled the figures in company with appellant and Thomas, they arrived at the conclusion that Thomas had been paid in full; refused to give an instruction requested by appellant to the effect that if the jury believe from the evidence that defendant was mistaken in his belief that Thomas had money coming to him at the time of the settlement, and that appellant compromised with Thomas in furtherance of such mistake, then their verdict should be in favor of defendant. The rulings of the court, assigned as error, were made upon the theory that a compromise cannot be set aside on the ground of mistake unless the mistake was mutual and made by both parties. It is appellant's contention that where the mistake of one of the parties is of such a character that it goes to the very substance of the transaction and results in an entire absence or want of consideration for the contract or agreement, it need not be mutual, and that in this case the compromise agreement was entirely without consideration for the reason that no amount was due and owing from appellant to Thomas and there was nothing to compromise.

That appellant and Thomas did enter into a compromise and settlement agreement appears beyond question from the record. Appellant was asked and answered as follows:

"Q. Did you, on the evening of November 14th or November 15th, compromise with Mr. Thomas and settle the account as he so testified here in this court room?

"A. Yes."

There is other evidence in the record of a like character, amply sufficient to establish the fact that there was a *bona fide* dispute between appellant and Thomas, which dispute was later terminated by the compromise and settlement, reached on appellant's own figures and terms. In compromise and settlement of their respective claims against each other and in settlement of their dispute an amount was determined or reached and stated by appellant, appellant agreed to pay the same to Thomas and Thomas agreed to accept such amount. There is no dispute in the

instant case that a controversy arose between appellant and Thomas as to the amount due from the former to the latter, Thomas claiming a considerably larger sum due than that reached by the compromise. There is sufficient evidence to support the verdict of the jury that appellant and Thomas spent two evenings going over the books, with respect to their claims one against the other, and finally reached a compromise and settlement, appellant agreeing to pay Thomas a specified amount in settlement of all claims made by Thomas against appellant. There was no mistake on the part of either of the parties as to the amount of the settlement, the only mistake being, if any, as appellant alleges, that two days after going over the books he discovered that he had made a mistake in calculation and had as a matter of fact paid Thomas in full. We therefore come to the point which is decisive of this case, namely, was there such a mistake by appellant that there was a total absence of consideration for the compromise agreement. In other words, did the court err in refusing to permit appellant to show by his books and otherwise that when the compromise and settlement was made, appellant was mistaken in the belief that he was indebted to Thomas?

The law favors the avoidance or settlement of litigation, and compromises in good faith are ordinarily sustained as being upon a sufficient consideration without looking to the merits of the controversy; otherwise compromises and settlements would be of little or no effect. It would appear that the settlement of a *bona fide* dispute or controversy is the consideration for a compromise or settlement, rather than any question as to the amount actually due or owing from one to another. It is the settlement of the *bona fide* controversy, differences or claims of the parties which forms the consideration for the new contract terminating the parties' former transactions. The court in *Heath v. Potlatch Lumber Co.*, 18 Ida. 42, 108 Pac. 343, 27 L. R. A., N. S., 707, considered this question and quotes with approval as follows:

"In *Smith v. Farra,* 21 Or. 395, 28 Pac. 241, 20 L. R. A. 115, the supreme court of Oregon entered into a very full discussion of this question and said:

" 'It is not every disputed claim, however, which will support a compromise, but it must be a claim honestly and in good faith asserted, concerning which the parties may *bona fide* and upon reasonable grounds disagree. The compromise of such a claim in good faith is a good consideration to pay money in settlement thereof, and when an action is brought upon such promise *it is no defense to say that the claim was not in fact a valid one, or that the parties were mistaken either as to the law or the facts. . . . . Nor is it a defense that the claim could not have been maintained if suit or action had been brought upon it, or that the parties were mistaken as to the law; for if it is, then it would follow that contracts by the parties settling their own disputes would at least be made to stand or fall according to the opinion of the court as to how the law would have determined it. The settlement of a controversy is valid and binding, not because it is the settlement of a valid claim, but because it is the settlement of a controversy.* And when such settlement is characterized by good faith, the court will not look into the question of law or fact in dispute between the parties, and determine which is right. All that it needs to know is that there was a controversy between the parties, each claiming in good faith rights in himself against the other and that such controversy has been settled.' "

In *Tatum v. Coast Lumber Co.,* 16 Ida. 471, 101 Pac. 957, 23 L. R. A., N. S., 1109, in the course of the opinion it is said:

"Contracts are the deliberate and voluntary obligations of parties capable of contracting, and they must be accorded binding force and effect. Those who enter into them must understand that they have a meaning and that they cannot be lightly tampered with. If a vendor can be heard to come into court and repudiate his contract on the ground that it had never been really consummated, for the reason that he made a mistake in computing the prices of the

various articles involved in the transaction, he might with equal reason insist that he had made a mistake in computing the profit he expected to realize out of the transaction. No such proposition can be tolerated.''

As will be observed in *Tatum v. Coast Lumber Co., supra,* the mistake made, from which relief was sought, was a mistake in totaling the amount due. In the instant case it is affirmatively alleged that a mistake was made by appellant which he later discovered. In *Tatum v. Coast Lumber Co., supra,* the court held that such a mistake was not mutual and did not go to the subject matter so that there was an absence of consideration. In other words, the court held that a unilateral mistake afforded no ground for relief. So in the instant case, if appellant made a mistake and it was a unilateral mistake, it would not be a defense.

In *Nelson v. Krigbaum,* 38 Ida. 716, 226 Pac. 169, the rule announced in *Heath v. Potlatch Lumber Co., supra,* is followed, the following language being used in the opinion:

''We are of the opinion that this case falls squarely within the principle announced in 8 Cyc., p. 509, quoted with approval in the case of *Heath v. Potlatch Lumber Co.,* 18 Ida. 42, 50, 108 Pac. 343, 27 L. R. A., N. S., 707, to wit:

'' 'The usual test, however, as to whether a compromise and settlement is supported by a sufficient consideration is held to be not whether the matter in dispute was really doubtful, but whether or not the parties *bona fide* considered it so, and that the compromise of a disputed claim made *bona fide* is upon a sufficient consideration, *without regard to whether the claim be in suit or not.* The law favors the avoidance or settlement of litigation, and compromises in good faith for such purposes will be sustained as based upon a sufficient consideration, without regard to the merits of the controversy or the character or validity of the claim of the parties, and even though a subsequent judicial decision may show the rights of the parties to have been different from what they at the time supposed.' ''

In *Ticknor v. McGinnis,* 33 Ida. 308, 193 Pac. 850, it is said:

"This court said in *Heath v. Potlatch Lumber Co.*, 18 Ida. 42, 108 Pac. 343, 27 L. R. A., N. S., 707: 'In such cases it is sufficient if the plaintiff in good faith make a claim and the defendant disputes such claim, and in consideration of the plaintiff's forbearance to sue in respect to such claim promises to pay plaintiff a certain sum of money. In such case there is a consideration for such promise, and the same may be enforced in an action at law.' "

Numerous authorities support the proposition that the compromise of a doubtful claim asserted in good faith constitutes a sufficient consideration for a new promise, even though it may ultimately be found that the claimant could not have prevailed. (*Murray Show Case & Fixture Co. v. Sullivan*, 15 Cal. App. 475, 115 Pac. 259; *Union Collection Co. v. Buckman*, 150 Cal. 159, 88 Pac. 708, 119 Am. St. 164, 9 L. R. A., N. S., 568; *Fairchild v. Cartwright*, 39 Cal. App. 118, 178 Pac. 333; *In re Clark's Estate*, 94 Cal. App. 453, 271 Pac. 542; *Bree v. Wheeler*, 4 Cal. App. 109, 87 Pac. 255; *Brecht v. Hammons*, 35 Ariz. 303, 278 Pac. 381; *Lewis v. Gove County Telephone Co.*, 95 Kan. 136, 147 Pac. 1122, Ann. Cas. 1916B, 1035; *Butson v. Misz*, 81 Or. 607, 160 Pac. 530; *John Wilson Estate Co. v. Dammeier Inv. Co.*, 83 Or. 283, 163 Pac. 590; *Hotel Randolph Co. v. John C. Watrous Co.*, 144 Wash. 215, 257 Pac. 629, 53 A. L. R. 766; 6 Cal. Jur., sec. 120, p. 175; 5 Cal. Jur., sec. 6, p. 390.) The following comprehensive treatise of the subject is to be found in 12 C. J., secs. 18–21, pp. 327 to 334:

"It is difficult to determine at just what point a claim is transformed from a baseless to a doubtful one. It is clear however, that the claim need not be valid in the sense that claimant be able to recover on it, and it is. not material that the other party may have a good defense; or that a subsequent judicial decision may show the rights of the parties to have been different from what they at the time supposed; or that one of the parties may afterward find out that he might have obtained a judgment more favorable to him by trying out the claim on its merits. In other words it is not necessary, to sustain a compromise of a doubtful right, that

the parties shall have settled the controversy as the law would have done. It is immaterial upon which side the right ultimately proves to be, and the compromise may be sustained, although it afterward develops that the right is on the other side, nor will the courts inquire as to which party had the better right, for, as held by many decisions, to require a party to establish his original right would, in effect, destroy all compromises and render such contracts useless.''

''According to the great weight of authority, it is sufficient to support a compromise that there be an actual controversy between the parties of which the issue fairly may be considered by both parties as doubtful and that, at the time of the compromise, they in good faith so consider it. It is not essential that the question be in fact doubtful in legal contemplation.''

It may be observed that there is evidence in the record to the effect that Thomas called upon appellant to examine his books and that appellant refused to permit him to go over his books or to make an examination of the accounts kept by appellant. In appellant's testimony on this point the following is disclosed:

''Q. Mr. Thomas came up there one night and got your books, didn't he?

''A. Came out to get my books?

''Q. Yes. And you told him you could take care of your own books—came up there and when he got over to your home, you told him you could take care of your own books?

''A. I think so.

''Q. What?

''A. I think so. I don't remember distinctly what was said.

''Q. At any rate you have never turned over the books to him to go over?

''A. No. I kept my account in there.''

Appellant kept the books, Thomas was ''not capable of keeping books''; therefore appellant had all of the information, and when he made the settlement with Thomas we

think it may be fairly presumed that his intention was to protect his own interests. If appellant made a mistake it was due to his own negligence and was not mutual. Thomas was insisting upon considerably more than was provided for under the compromise or settlement. The error in the figures, if any, cannot be attributed to Thomas. In *Brook v. Hall,* 36 Kan. 697, 14 Pac. 236, the court considers the question of a miscalculation, saying as follows:

"The rule is if two parties, having, or supposing they have, claims upon each other, agree to compromise those claims, and to come to a general settlement of the matters in dispute between them without resorting to litigation, and they act with good faith, and stand upon an equal footing, and have equal means of knowledge as to the facts, the compromise is binding. It is not enough to set aside the compromise that one of the parties may have been in error as to his figures. It is not claimed in this case that there was any mutual mistake of the parties, or that Brooks was guilty of any fraud, deceit, or misrepresentation. The only reason that Hall claims the compromise and settlement should be set aside is because he made a mistake in subtraction at the time of the compromise. This is not enough to invalidate the transaction."

See, also, *Brevoort v. Partridge,* 156 Mich. 359, 120 N. W. 803.

It is clear that appellant thought, when he made the settlement, that he owed Thomas some amount, and it is also clear that Thomas thought appellant owed him a larger amount than the compromise called for. The jury having determined that there was a *bona fide* dispute and a compromise or settlement reached, under the great weight of authority all matters involved in the former transaction were immaterial and the compromise is binding in the absence of fraud, deceit, misrepresentation or coercion, and such is not alleged nor suggested in the record before us. We have reached the conclusion that there is no reversible error in the record and that the trial court did not err in denying the motion for new trial. The judgment must be

affirmed and it is so ordered, with costs awarded to respondent.

Givens, C. J., and Morgan, J., concur.

Holden and Ailshie, JJ., did not sit at the hearing and took no part in the decision.

Petition for rehearing denied.