[Filed December 14, 1891.]

## CYRUS SMITH *v.* G. R. FARRA.

CONTRACTS — COMPROMISE — NEW AGREEMENT.—A settlement and compromise of a claim asserted on reasonable grounds and in good faith, which the parties, having equal knowledge of the facts, consider doubtful, constitute a new and valid agreement which will be enforced in law, although the matter compromised be not in fact doubtful in legal contemplation, and the settlement be not what a court would have adjudged upon the facts of the case.

Benton county: M. L. PIPES, Judge.

Defendant appeals. Affirmed.

This is an action to recover seven hundred dollars on an agreement of compromise between plaintiff and the defendant Farra. The facts are these: On July 24, 1888, defendant Farra and one Montieth, for three hundred and five dollars in cash, sold and conveyed to plaintiff, by deed containing covenants of title and warranty, lots 7 and 8 in block 4, in West Yaquina, Benton county, Oregon. In August, 1890,

Farra, discovering that he and Montieth did not own the property sold to plaintiff, wrote him the following letter:

"CORVALLIS, Oregon, August 7, 1890.

"*Mr. Cyrus Smith, Amity, Or.*—DEAR SIR: The men who have been engaged in getting up an abstract of Benton county, have made a discovery that we sold you two lots, Nos. 7 and 8, in block 4, in West Yaquina, that had been sold and deeded before to Mr. W. P. Keady. We would like you to select two other lots in or near those, or even in some other portion, of about the same value, and we will deed them to you.

"Yours respectfully,

"G. R. FARRA."

To this letter the plaintiff replied as follows:

"AMITY, Oregon, August 11, 1890.

"*Dr. G. R. Farra*—DEAR SIR: Your letter of the seventh inst. is at hand; and in reply will say I was very much surprised to hear that Mr. Keady had a deed made prior to mine to the lots in West Yaquina that you had deeded to me. I was also a little diverted at the idea that you should say 'the lots Mr. Buford sold you,' when the record shows that you and Mr. Montieth sold me the lots, and Mr. Buford was not known in the transaction. I have had those lots in a real-estate man's hands for some time; he has been instructed by me to sell the two for one thousand dollars, and nothing less. I have been offered eight hundred dollars for them and refused it. I have taken counsel in the matter, and have been told that beyond a doubt I could recover from you and Mr. Montieth all the damage it is to me; but as I am averse to lawsuits I had much rather settle the matter ourselves, providing I can do so without too much loss. Please write me how it happened that you deeded those lots to me after you had deeded them to Mr. Keady. In regard to taking other lots in place of them, I would do so providing I could get what I consider a fair deal. I know every foot of that ground, and excepting

about six lots I would rather have those lots than any other two lots in West Yaquina. Please send me a plat of West Yaquina, marking all the lots sold; also make me an offer of what you propose to do, and oblige,

"Yours truly,

"CYRUS SMITH."

Several other letters of both parties appear in the record, which are unnecessary to be set out here, but which show an honest *bona fide* attempt on the part of each to arrive at some satisfactory settlement of the controversy, but without being able to do so, until September 8, 1890, when plaintiff wrote to defendant the following letter:

"AMITY, September 8, 1890.

"*Dr. G. R. Farra*—DEAR SIR: Yours in answer to my inquiry as to your least cash price on certain lots in West Yaquina, came to hand over a week ago, but not before I had informed you that I did not want them at any price. For some reason, I have received no answer to my last letter to you, written August 30th. I now write to inform you that something must be done. We have talked this matter over enough to come to some conclusion. I want it understood that I refuse to take the lots you have offered me for those I bought of you; and I presume you will not contend that I am under any obligation to do so. I merely want you and Mr. Montieth to perfect my title to the lots I bought of you, or I want you to pay me eight hundred dollars. I think I am very reasonable in this offer. In fact, you have indirectly offered me that, for you have offered me two lots that you valued at three hundred and fifty dollars each and one hundred dollars, which is exactly eight hundred dollars. I am aware that you would rather dispose of the lots than come out with the money, which I presume is the reason you don't give me my choice to take the money or the lots. But the lots I bought of you I bought for a particular purpose; and the lots you have offered me won't fill that purpose in any sense, owing to

the lay of the land. In fact, I would rather have the lots I bought of you than lots 1 and 2, immediately in front of them. Please let me know immediately your final conclu-'sion.

"Yours truly,

."CYRUS SMITH."

To this letter Farra replied as follows:

"CORVALLIS, Oregon, September 22, 1890.

"*Mr. Cyrus Smith, Amity, Or.*— DEAR SIR: Your last has been to hand for quite awhile, but I have been conferring with others of the company to know what best to do. We have decided that we made you a fair proposition on your lots, and more than the lots can be sold for to-day, and more than you can collect for them if carried into litigation. We will make you one more proposition. We will give you, as stated in one of my letters, two lots in block 3, facing as yours face, and one hundred dollars, or we will give you seven hundred dollars in cash. If this is not satisfactory, you can proceed to collect your damages by law.

"Yours respectfully,

"G. R. FARRA."

Upon receipt of this letter, plaintiff wrote accepting the cash offer of $700 as follows:

"AMITY, September 24, 1890.

"*Dr. G. R. Farra, Corvallis, Or.*— DEAR SIR: Yours of the twenty-second was received yesterday; and in reply will say, in justice I believe I am entitled to eight hundred dollars, but I can't afford to go into litigation for one hundred dollars. Therefore, I accept your offer of seven hundred dollars; and on receipt of the money, I will relinquish all my claims on you and Mr. Montieth for lots seven and eight in block four of West Yaquina. Send check on the bank and I will receipt you for it.

"Yours truly,

"CYRUS SMITH."

Defendant having refused to comply with his agreement and pay the seven hundred dollars, this action was brought.

The trial in the court below resulted in a verdict and judgment in favor of the plaintiff, from which defendant appeals.

*L. Flinn*, and *J. R. Bryson*, for Appellant.

Where a disputed claim is legally groundless, a promise made upon a compromise of it is not binding. (*Schnell* v. *Nell*, 17 Ind. 29; 79 Am. Dec. 453; *Spahr* v. *Hollingshead*, 8 Blackf. 415; *Smith* v. *Boruff*, 75 Ind. 416; *Ormsbee* v. *Howe*, 54 Vt. 182; 41 Am. Rep. 841; 1 Suth. Dam. 475; *U. S. Mortg. Co.* v. *Henderson*, 111 Ind. 24; *Emmettsburg R. Co.* v. *Donoghue*, 67 Ind. 383; 1 Am. St. Rep. 396; *Anthony* v. *Boyd*, 15 R. I. 495; *O. & C. R. Co.* v. *Potter*, 5 Or. 228; *Headley* v. *Hackley*, 50 Mich. 43.)

Where the consideration of a contract is money, and nothing else, courts may determine its adequacy. (*Wolford* v. *Powers*, 85 Ind. 301; 44 Am. Rep. 16.)

The compromise or submission must be mutually binding upon both parties, or consideration fails. (1 Parsons Con. 438; *Scott* v. *Bush*, 26 Mich. 418; 12 Am. Rep. 311.)

Compromise is founded on the same principle as accord and satisfaction. (1 Suth. Dam. 431.)

The measure of damages for breach of covenant of seizin, where nothing passes by the conveyance, is the amount of the consideration paid and interest. (2 Suth. Dam. 257, 264.)

Accord without satisfaction is of no effect—that is, it must be executed and fully completed by payment and acceptance. (1 Am. & Eng. Enc. Law, 94; 1 Suth. Dam. 432; *Mitchell* v. *Hawley*, 4 Denio, 414; 47 A. D. 260; *Kromer* v. *Kline*, 75 N. Y. 577; 31 Am. Rep. 491; *Noe* v. *Christie*, 51 N. Y. 270.)

*J. W. Rayburn*, for Respondent.

The acceptance of a subsisting offer is a consummation of a contract. (*Mactier* v. *Frith*, 6 Wend. 103; 21 Am. Dec. 302; *Moore* v. *Pierson*, 6 Iowa, 279; 71 Am. Dec. 409; 2 Parson's Cont. 681; 5 Lawson's Rights, &c., §§ 2228, 2231, 2233.)

The compromise of a doubtful or disputed claim is a

good consideration for a contract and is binding upon all concerned. (Parson's Con. 467; *Fisher* v. *May*, 2 Bibb, 448; 5 Am. Dec. 626; *Wehrum* v. *Kuhn*, 61 N. Y. 623; *Farmers', etc. Ins. Co.* v. *Chesnut*, 50 Ill. 111; 99 Am. Dec. 492; *Hoge* v. *Hoge*, 1 Watts, 163; 26 Am. Dec. 52; *Wells* v. *Neff*, 14 Or. 72; *O. & C. R. R.* v. *Potter*, 5 Or. 228; 3 Enc. Law, 837.)

A separate judgment may be taken against persons sued jointly. (*Ah Lep* v. *Gong Choy*, 13 Or. 214; *Fisk* v. *Henarie* 14 Or. 29; Pomeroy's Remedies, § 305; Hawes on Parties, § 97; Code, § 244.)

BEAN, J.—The only question presented on this record is the validity of the agreement of compromise between plaintiff and defendant under the facts heretofore stated. The contention of defendant is, that for a breach of the covenant of title contained in his deed to plaintiff, the law fixes the measure of damages at the purchase price and interest, and that therefore the claim of plaintiff was a fixed and liquidated one, and in no sense such a doubtful claim as will support an agreement of compromise. Upon this record, it must be conceded that plaintiff had a valid cause of action against defendant for a breach of the covenants of the deed upon which he could have successfully maintained legal proceedings, and that both parties, in their negotiations for a settlement, believed in good faith that the measure of damages was the actual value of the property conveyed at the time the negotiations took place, and not the consideration and interest; and in order to avoid litigation, and compromise the matter in dispute between them, the agreement sued on was made. Both parties were acting in the utmost good faith, with equal knowledge of the facts, and plaintiff had reasonable ground to think (for he had taken legal advice on the question) that his damages amounted to $800, and intended in good faith to assert his claim; but to avoid litigation he forebore to do so, on account of defendant's promise to pay him $700, preferring to accept that amount rather than to go into litigation; and defendant preferred

to pay that sum rather than to suffer the consequences of a lawsuit.

That there was an actual *bona fide* dispute between these parties as to the amount of plaintiff's damages, which each in good faith believed to be doubtful, and that the settlement was intended in good faith, as a compromise of such dispute, is not open to question on this record. But it is now insisted that the dispute was about a matter, not in fact doubtful, although the parties so considered it, and therefore the agreement of compromise is without consideration. The law favors voluntary settlements of controversies between the parties, which are characterized by good faith and a full disclosure of all the facts. ( *Wells* v. *Neff*, 14 Or. 66.) And such settlements will be upheld and enforced, although the disposition made by the parties in their agreement may not be what the court would have adjudged, had the controversy been brought before it for decision; nor need the dispute to have been about a claim or matter actually doubtful. If the parties *bona fide*, and on reasonable grounds, believed it to be doubtful, it is a sufficient consideration to support the compromise.

"If the requisites of good faith exist," says Mr. Pomeroy, "it is not necessary that the dispute should be concerning a question really doubtful, if the parties *bona fide* consider it so; it is enough that there is a question between them to be settled by their compromise." (Pom. Eq. § 850.) And "no investigation into the character or value of the different claims submitted," says Mr. Parsons, "will be entered into for the purpose of setting aside a compromise, it being sufficient, if the parties entering into the compromise, thought, at the time, that there was a dispute between them." (1 Parsons Con. (7 Ed.) 439.) It is not every disputed claim, however, which will support a compromise, but it must be a claim honestly and in good faith asserted, concerning which the parties may *bona fide*, and upon reasonable grounds, disagree. The compromise of such a claim in good faith, is a good consideration to pay money

in settlement thereof; and when an action is brought upon such promise, it is no defense to say that the claim was not in fact a valid one, or that the parties were mistaken either as to the law or the facts. (*Stewart* v. *Ahrenfeldt*, 4 Denio, 189; *Crans* v. *Hunter*, 28 N. Y. 389; *White* v. *Hoyt*, 73 N. Y. 505; *Griswold* v. *Wright*, 61 Wis. 195; *Brooks* v. *Hall*, 36 Kan. 697; 14 Pac. Rep. 236; *Flannagan* v. *Kilcome*, 58 N. H. 443; *Wehrum* v. *Kuhn*, 61 N. Y. 623.)

Nor is it a defense, that the claim could not have been maintained if suit or action had been brought upon it or that the parties were mistaken as to the law; for if it is, then it would follow that contracts by the parties settling their own disputes, would at least be made to stand or fall, according to the opinion of the court as to how the law would have determined it. "If, therefore," says LOGAN, J., "the solemn compromise of the parties be made to depend on the question, whether the parties have so settled the dispute, as the law would have done, then it may be truly said that a compromise is an unavailing idle act, which questions even the power of the parties to bind themselves." (*Fisher* v. *May*, 2 Bibb, 448; 5 Am. Dec. 626.)

The settlement of a controversy is valid and binding, not because it is the settlement of a valid claim, but because it is the settlement of a controversy. And when such settlement is characterized by good faith, the court will not look into the question of law or fact in dispute between the parties, and determine which is right. All that it needs to know is, that there was a controversy between the parties, each claiming in good faith rights in himself against the other and that such controversy has been settled. In *Cook* v. *Wright*, 1 Best & Smith (101 E. C. L.), 559, it appeared from the evidence that defendant believed himself not liable on the demand of plaintiff, but he knew that plaintiff thought him liable, and would sue him if he did not pay; and in order to avoid the expense and trouble of legal proceedings against him, agreed to compromise, and gave his note for the amount agreed on in compromise; and the

question was whether a person who has given a note as a compromise of a claim honestly made upon him, and which but for that compromise would at once have been brought to a legal decision, can resist payment of the note on the ground that the original claim thus compromised might have been successfully resisted; and it was held he could not, BLACKBURN, J., saying: "The real consideration depends on the reality of the claim made and the *bona fides* of the compromise."

In *Callisher* v. *Bischoffsheim*, 5 Q. B. 449, the plaintiff claimed that certain moneys were due him from the government of Honduras, and was about to take proceedings to enforce payment; and in consideration that the plaintiff would forbear taking such proceedings for an agreed time, the defendant promised to deliver to him certain debentures. In an action for a breach of the contract, the plea was, that at the time of making the contract, no money was due the plaintiff from the government of Honduras. This plea was held bad on demurrer; COCKBURN, C. J., saying: "No doubt it must be taken that there was in fact no claim by the plaintiff against the Honduras government which could be prosecuted to a successful issue by legal proceedings; but this does not vitiate the contract and destroy the validity of what is alleged as the consideration. The authorities clearly establish that if an agreement be made to compromise a disputed claim, forbearance to sue in respect of that claim is a good consideration; and whether proceedings to enforce the disputed claim have or have not been instituted, makes no difference."

In *Grandin* v. *Grandin*, 49 N. J. L. 508; 60 Am. Rep. 642, the plaintiff was an heir at law of the deceased and in good faith filed objections to the probate of the will; and in consideration of his withdrawing his objections and making no further opposition to the probate of the will, the defendant agreed to pay him three hundred dollars. In an action on this promise it was held that the compro-

mise was valid and binding, although it ultimately appeared that the claim of the plaintiff was wholly unfounded.

In *Bellows* v. *Sowles*, 55 Vt. 391; 45 Am. Rep. 621, the facts are as in the case last above cited, except that the plaintiff had not instituted proceedings to contest the will, but was making arrangements to do so, and defendant promised to pay him five thousand dollars if he would desist from such opposition to the will. In an action on a promise the court held, that plaintiff was not bound to show that his ground of opposition to the will would have been sufficient to have defeated its probate. It was enough if he were able to show that he honestly thought he had good and reasonable ground for making the claim that the will, so far as it related to him, was the production of undue influence, and for that reason he honestly and in good faith intended to oppose its establishment. In some of the authorities it is said, that in order that a compromise may constitute a sufficient consideration to support an executory contract, the claim must be at least doubtful, and there must be colorable ground of dispute and some legal or equitable foundation for the claim. (*Anthony* v. *Boyd*, 15 R. I. 495; *U. S. Mortg. Co.* v. *Henderson*, 111 Ind. 24.) This statement must be construed with reference to the facts of the particular case, and when so read, will, we think, be found to mean nothing more than that the claim must be a serious one, honestly made, which the party asserting does not know is unsubstantial, but believes he has a fair chance of sustaining, or does not know facts, to his knowledge unknown to the other party, which show his claim a bad one.

As a result from the authorities, we think a doubtful or disputed claim, sufficient to constitute a good consideration for an executory contract of compromise, is one honestly and in good faith asserted, arising from a state of facts upon which a cause of action can be predicated, with the reasonable belief on the part of the party asserting it that he has a fair chance of sustaining his claim, and concerning which

an honest controversy may arise, although in fact the claim may be wholly unfounded. In the case before us, plaintiff not only had a cause of action but an admitted right of action, growing out of the sale of the property and the execution and delivery of the deed, which he could have prosecuted to a successful issue, and upon the facts of which he honestly and in good faith believed his damages amounted to at least eight hundred dollars. This question he intended to submit to judicial decision. It was a question concerning which there could be and actually was an honest controversy. The proposition of settlement came from defendant, and the compromise was effected after weeks of negotiation, at his solicitation. He had as full and complete knowledge of all the facts as the plaintiff, and presumedly more so. By the compromise, and on the faith of defendant's promise, plaintiff forbore to assert his claim in the courts, and gave up a portion of what he believed to be a valid claim; and defendant, instead of being annoyed with an action escaped the vexations incident thereto, although other motives may have prompted him to make the proposition of settlement, and this is a sufficient consideration to support defendant's promise. This is so, although it may now be clear that plaintiff could only have recovered in an action the consideration by him paid for the property, and that his claim for eight hundred dollars was in law wholly unfounded.

The defendant cannot escape liability on his solemn contract entered into at his request and solicitation, by now showing or claiming that he was mistaken as to the law. It is sufficient for us to know that there was a dispute between the parties, and that it has been in the utmost good faith settled. Whether it was entirely the desire to avoid litigation, or what appeared to him some other sufficient consideration that induced the defendant to make the offer of settlement accepted by plaintiff, is unnecessary for us to inquire. It is enough, that with full knowledge of all the facts, and without any fraud or concealment on the part of

plaintiff, the offer was made and accepted. Nor is it necessary for plaintiff to show that the law would have awarded him the damages claimed. It is enough, if he had an honest, reasonable ground to think his damages amounted to eight hundred dollars, and intended in good faith to assert it, and forbore to do so on account of defendant's promise.

Conceding, therefore, that the measure of damages growing out of the sale of the property and execution and delivery of the deed from defendant to plaintiff is the purchase price and interest—a question, however, we are not called upon to determine—the compromise between plaintiff and defendant was supported by a sufficient consideration, and is valid and binding.

The judgment of the court below is affirmed.

STRAHAN, ꓘ. J., being pecuniarily interested in the result of this action, did not sit in this case, and took no part in this decision.