[Civil No. 2583.   Filed December 23, 1927.]

[262 Pac. 616.]

A. T. HAMMONS, Superintendent of Banks of the State of Arizona, and Ex-officio Receiver of the CITIZENS BANK AND TRUST COMPANY, a Corporation, Insolvent, Appellant, v. E. A. WATKINS, Appellee.

Messrs. Knapp, Boyle & Pickett, for Appellant.

Messrs. Ellinwood & Ross, Mr. John E. Sanders, and Mr. Wm. H. MacKay, for Appellee.

LOCKWOOD, J.—The Citizens Bank & Trust Company, hereinafter called the bank, was a corporation duly incorporated under the laws of the territory of Arizona on or about the fifteenth day of June, 1906. Said bank commenced business shortly after its incorporation and continued to engage in the banking business until about the twenty-seventh day of August, 1923. At that time, it appearing to the state banking department that the bank was insolvent, plaintiff herein, A. T. Hammons, in his capacity as superintendent of banks of the state of Arizona and *ex-officio* receiver of said bank, took possession of its assets, and, pursuant to the law, engaged in its liquidation. On the twenty-ninth day of January, 1924, plaintiff in his official capacity levied an assessment upon the stockholders of the bank of $100 per share for the purpose of enforcing the double liability imposed by article 14, section 11, of our Constitution. E. A. Watkins, hereinafter called defendant, was one of the original incorporators of the bank, and at the time of its closing was

the owner of 23¾ shares of its capital stock. Of this stock five shares had been issued to defendant in 1906 and the balance which had been issued during the same year to certain third parties had been transferred to defendant during the years 1913 and 1916. Demand was made on defendant for the payment of the assessment so levied against his stock, and, on his failure to pay the same, plaintiff, on the first day of June, 1925, brought suit to collect it.

The foregoing facts, with a few minor exceptions, were presented by the complaint and defendant demurred and answered. The court sustained defendant's demurrer to the complaint, and plaintiff refusing to amend, judgment was rendered in favor of defendant, and the matter is before us on appeal. No issues of fact are raised by the pleadings, and the questions presented are solely legal in their nature. They may be stated thus briefly:

(1) Is the provision of the Constitution of Arizona imposing a double liability upon stockholders of insolvent banks applicable to banks incorporated before the adoption of the Constitution, and whose charters contain the express provision that the private property of shareholders shall be exempt from the debts of the corporation?

(2) If such constitutional provision does apply to banks so incorporated and with such provisions in their charters, under the facts of the foregoing case has the statute of limitations run?

The provision of the Constitution which plaintiff claims makes defendant liable for the assessment in question reads as follows:

"The shareholders or stockholders of every banking or insurance corporation or association shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such corporation or association, to the extent of the amount of their stock therein, at

the par value thereof, in addition to the amount invested in such shares or stock.'' Article 14, § 11, Const. Ariz.

Defendant contends that such provision of our Constitution, if it is held to apply to banking corporations with charter provisions exempting stockholders from additional liability and organized before the adoption of the Constitution, violates that provision of article 1, section 10, of the Constitution of the United States which forbids a state to pass any law impairing the obligation of contracts.

It is claimed by defendant and admitted by plaintiff that the charter of a private corporation is a contract between the state and the corporation; that the legislative authority cannot repeal, impair, or alter such a charter against the consent of the corporation, subject to certain exceptions which we shall discuss hereafter, and that article 14, section 11, is an alteration of the charter of the bank herein. *Dartmouth College* v. *Woodward*, 4 Wheat. 518, 4 L. Ed. 629; *Pennsylvania College Cases*, 13 Wall. 190, 20 L. Ed. 550; *Miller* v. *New York*, 15 Wall. 478, 21 L. Ed. 98.

It is argued, however, by plaintiff that this case falls within four of the well-recognized exceptions to the rule, and we shall discuss his contentions in their order.

The first one is that, where the legislature has reserved the right to alter or amend the charter of a corporation, it can be done without a violation of the federal constitutional provision above referred to. This is not denied by defendant, but it is his claim that no such reservation existed at the time of the incorporation of the bank. It is, of course, for plaintiff to show the reservation, if he contends there was one. To do this he relies upon one provision of the Organic Law of the Territory of Arizona and

two provisions of the Territorial Bill of Rights. These read, respectively, as follows:

"That nothing in this act contained shall be construed to abridge the power of Congress to annul any law passed by a territorial Legislature, or to modify any existing law of Congress requiring in any case that the laws of any territory shall be submitted to Congress." Organic Law of Arizona (Par. 63, § 6, Rev. Stats. Ariz. 1901, p. 86).

"No corporation formed under the laws of this territory shall be dissolved or its rights impaired, except by judicial proceedings." Paragraph 28, Rev. Stats. Ariz. 1901, Civ. Code.

"This bill of rights shall be the supreme law of the land, subject only to the Constitution and laws of the United States. It shall not be altered or amended except by the concurrence of a majority of all the members elected to both branches of the Legislative Assembly. The vote on all alterations or amendments shall be taken by yeas and nays, and entered on the journals of each house." Paragraph 31, Rev. Stats. Ariz. 1901, Civ. Code.

So far as the provision of the Organic Law is concerned, we cannot see wherein it has any bearing on the present situation. That Congress had plenary power to annul any law passed by the territorial legislature is undisputed, but this right is inherent and in no way dependent upon statute. *Latter Day Saints* v. *United States,* 136 U. S. 1, 34 L. Ed. 478, 10 Sup. Ct. Rep. 792; *First Nat. Bank* v. *Yankton County,* 101 U. S. 129, 25 L. Ed. 1046. Article 1, section 10, of the federal Constitution is a limitation only of the right of a state and not of the right of Congress to impair the obligation of a contract. *Sinking Fund Cases,* 99 U. S. 700, 25 L. Ed. 496. The section of the Organic Law cited was not a reservation to the territory of Arizona of the right to alter the charter of a corporation under its laws, but merely a declaration of the inherent power of Congress.

Taking paragraph 28, *supra,* alone, it would seem to be rather an express affirmance of defendant's position that the charter of the bank could not be altered, than a support of plaintiff's argument that it can. Plaintiff contends, however, that the use of the following language in paragraph 31, *supra,* "This Bill of Rights shall be the supreme law of the land. . . . It shall not be altered or amended except by the concurrence of a majority of all the members elected to both branches of the Legislative Assembly," means that the legislature impliedly reserved the power to alter the Bill of Rights, including, of course, paragraph 28, *supra,* and thereby inferentially could provide that the contractual rights of a corporation might be impaired by legislative act. We think these statutory provisions are not reasonably susceptible of this construction. The so-called Bill of Rights was merely a legislative enactment of the same character and authority as any other act of the legislature. The right of a subsequent legislature to amend or repeal it entirely was no more and no less than with any ordinary law, and paragraph 31, *supra,* in so far as it attempted either to limit or enlarge the general powers of a subsequent legislature in any respect, was void. *Nevada Co. v. Hicks,* 48 Ark. 515, 3 S. W. 524; *Mix v. Illinois Cent. R. R.,* 116 Ill. 502, 6 N. E. 42. Where the right to amend or repeal a legislative grant is claimed, it should be clear and explicit (*Owensboro v. Cumberland Tel. Co.,* 230 U. S. 58, 57 L. Ed. 1389, 33 Sup. Ct. Rep. 988; *Yoncalla State Bank v. Gemmill,* 134 Minn. 334, L. R. A. 1917A 1223, 159 N. W. 798), and cannot be implied from the inherent power of a legislature to repeal previous legislation.

There are four classes into which reservations of the power contended for by plaintiff generally fall. The first is where words of reservation are inserted in the charter itself. No such provision appears in

the charter of this bank. The second is where there is an express statement in the state Constitution or in the law under which corporate charters are granted that such charters shall be subject to amendment, alteration or repeal. Neither our Organic Law, which in 1906 took the place of a Constitution, nor our Corporation Code then contained any such clause. The third is where the state Constitution declares that corporations may be formed under general laws and that all general laws passed pursuant to the constitutional provision may be altered from time to time or repealed. This is absent from the Organic Law. The fourth is when the Corporation Code contains a provision that the Code itself may be amended or repealed. The correctness of this last principle has been much questioned by the late case of *Owensboro* v. *Cumberland Telephone Company, supra.* Admitting for the sake of argument the soundness of the proposition, it is only where the provision in regard to repeal is contained in the laws relating to corporations that it has been held such provision gives the right to alter charters granted under the law. *Sherman* v. *Smith,* 1 Black 587, 17 L. Ed. 163. We are, therefore, of the opinion that there was no reservation by the territory of Arizona, at the time the bank was incorporated, of the right to alter or amend its articles of incorporation, and that plaintiff, therefore, cannot rely upon the first exception stated by him.

The second exception to the general principle above set forth is that, when the statutes at the time of incorporation impose a liability on stockholders, such obligation is *ipso facto* a part of the charter of the corporation, and as it is not contractual but *quasi* contractual in its nature, it could be altered without violating the prohibition of the section of the federal Constitution above referred to. It is conceded by defendant that the constitutional provision does not

protect *quasi* contracts. Let us determine, then, whether or not there was a provision in the statutes of the nature referred to by plaintiff. He relies on paragraph 830, Revised Statutes of Arizona of 1901, Civil Code, to support his contention on this point. That paragraph, so far as material, reads as follows:

"The capital stock and the assets of the corporation are a security to depositors and stockholders, depositors having the priority of security over the stockholders, but the by-laws may provide that the same security shall extend to deposits made by stockholders."

We cannot see where this paragraph in any respect places stockholders as such under any obligation to creditors. It merely is a declaration of what was already the common-law rule, that corporate assets must be appropriated to the payment of corporate debts before any part is distributed to shareholders, with a proviso that certain classes of corporate debts might or might not be preferred to others, but imposing no liability whatever upon stockholders as such. There being no liability in the beginning there was none to alter in 1913.

The third exception is that the bank by failing to dissolve and go out of business when the Arizona Constitution was adopted consented to the alteration of its charter. Defendant has well answered this proposition in his brief. If the Arizona constitutional provision applies to the bank without violating the federal Constitution, there is no need for such a suggestion. If, on the other hand, it could not apply to the bank without such violation, it would be absurd to hold that the bank has violated an unconstitutional law merely by standing on its constitutional rights. We have examined carefully the cases cited by plaintiff in support of this contention, and cannot see where they are applicable in the

slightest degree. The argument was made in *Moredock* v. *Kirby* (C. C.), 118 Fed. 180, that a nonresident of Kentucky by continuing to do business in that state had consented to a Kentucky statute otherwise not applicable to him. The court held that his constitutional rights were probably inalienable, but whether they were or not, "anything short of the most express and unequivocal renunciation of them would necessarily be ineffectual," and the suggestion that continuing to do business was a surrender of a constitutional right was held to be "too shadowy to demand serious consideration."

The fourth contention of plaintiff, and the one which on first examination seems to have most merit, is that the Arizona constitutional provision could be justified as a valid exercise of the police power. The case of *Noble State Bank* v. *Haskell*, 219 U. S. 104, 55 L. Ed. 112, 31 Sup. Ct. Rep. 186, Ann. Cas. 1912A 487, 32 L. R. A. (N. S.) 1062, goes farther in the extension of the doctrine of the police power than any case of which we are aware, but even it does not go to the extent claimed by plaintiff. As was well said in the case of *Yoncalla State Bank* v. *Gemmill, supra,* discussing the Haskell case:

"It is one thing to impose burdens upon the property voluntarily placed in a banking business by a stockholder of a bank, and quite another to impose a personal liability upon him, thereby subjecting property which he has not devoted to banking business to be taken from him to pay creditors of the bank, and this in the face of the constitutional guaranty when he became a stockholder that it shall not be done."

We quite agree with the Haskell case, *supra,* that when a man puts property into a business which is naturally and reasonably subject to regulation for the benefit of the public the property he devotes to that purpose is subject to all reasonable regulation under the police power; but we think it is extending

that doctrine entirely too far to say that, because he has put a certain definite amount of his money into such business with the express provision in the agreement guaranteed by the federal Constitution against impairment that his liability shall be limited to the amount so devoted, in the regulation, not of his private business, but of the business of the corporation to which he has made a specifically limited contribution, his private property may be taken for the purpose, not of regulating the conduct of the business, but of shifting the burden of loss from one class of citizens to another.

We therefore hold that article 14, section 11, of the Constitution of Arizona, imposing double liability upon stockholders of insolvent banks, and all statutes passed in pursuance of such provision, in so far as it is attempted to apply them to banks organized before such constitutional provision was adopted, and whose charters contain a provision similar to that of the bank in the present case, is in conflict with article 1, section 10, of the Constitution of the United States, and unconstitutional. In view of the above expression it is unnecessary that we discuss the matter of the statute of limitations.

The judgment of the superior court of Cochise county is affirmed.

ROSS, C. J., and McALISTER, J., concur.