[Civil No. 2739.   Filed December 17, 1928.]

[272 Pac. 643.]

WILLIAM H. DAGG, WILLIAM J. BURKE, ROBERT POWELL, ROBERT K. CORKHILL. HARRY JOHNSON, MRS. MARTHA HARBIN, H. C. KABELIN, BURL VINCENT, E. E. HARBIN and W. W. PERKINS, Appellants, v. A. T. HAMMONS, Superintendent of Banks of the State of Arizona, and Ex-officio Receiver and in Charge of the BANK OF WINSLOW, an Insolvent Banking Corporation, Appellee.

Messrs. Hibbard & Kleindienst, for Appellants.

Mr. Sidney Sapp and Mr. Joseph H. White, for Appellee.

LOCKWOOD, J.—A. T. Hammons, hereinafter called plaintiff, in his capacity as state superintendent of banks, brought suit against William H. Dagg, and others whom we need not name at present, hereinafter called defendants, to enforce a double stockholders' liability against defendants as stockholders of the Bank of Winslow. The complaint, after the necessary formal matters, alleged in substance that the Bank of Winslow had been found to be insolvent by plaintiff on October 4th, 1924, and was so declared by an order of the superior court of Navajo county on the twenty-seventh day of March, 1925; that on the fourth day of October aforesaid, the defendants, and each of them, were stockholders in the said bank, setting up the number of shares of stock it was claimed each one then held; that at such time the total capital stock of the bank was $150,000, divided into 1,500 shares of $100 each; that plaintiff about the 26th of August, 1925, ascertained its liabilities exceeded its assets by more than $150,000; and that he had therefore levied an assessment of one hundred per cent on the stockholders. The complaint concludes with the allegation that the defendants had failed to pay the assessment and a prayer for judgment in conformity with the statute imposing double liability upon stockholders of insolvent banks. The defendants moved that the action abate on the ground that the permission of the superior court to bring

the action had not been obtained by plaintiff, and demurred on the ground that it did not appear from the complaint when defendants became stockholders of the Bank of Winslow, and that it was not alleged that the assets were not sufficient to meet the liabilities of the bank. The motion to abate and the demurrer were overruled by the court. Answering, the defendants set up as special defenses, among other things, that no order of the court had been made permitting the bringing of the action, or declaring that it was necessary to bring it, or establishing the extent of the bank's insolvency; second, that, so far as defendants Dagg and Burke were concerned, sixty-five shares of the stock owned by the former, and twenty shares of that owned by the latter, were acquired by them before statehood; third, that, so far as several, at least, of the defendants were concerned, at the time the bank was closed they had on deposit with it various sums of money, and that plaintiff had before the bringing of this suit declared and paid to the other depositors and creditors of the said bank a large sum of money as dividends on their respective claims, but had failed to pay or credit to defendant any dividends on their deposits, and that such dividends due them as depositors were greater than the sums demanded of them under the alleged double liability.

At the trial defendants asked that the court make certain specified findings of fact and conclusions of law, which request was by the court refused on the ground that its own findings and conclusions of law were sufficient. After judgment and findings were filed, defendants moved the court to amend them, which motion was denied. The judgment was rendered on the eleventh day of October, 1927, and on November 10th of the same year the trial court amended it by authorizing any dividends due to defendants by reason of their deposits to be applied

on the judgment rendered or upon any other indebtedness due the bank by them.

There are some thirty-seven assignments of error, which we will consider in accordance with the questions of law raised, rather than numerically. The first point is that the complaint did not show when the defendants had become stockholders of the bank, and the demurrer on that ground should have been sustained. The basis of this objection is that, under the decisions of this court in the cases of *Hammons* v. *Watkins*, 33 Ariz. 76, 262 Pac. 616, and *Herndon* v. *Hammons*, 33 Ariz. 88, 262 Pac. 620, where a bank was incorporated before statehood, and its charter contained a provision that the property of the stockholders should be exempt from liability for corporate debts, the double liability set forth in article 14, section 11, of the Constitution of Arizona did not apply. In *Hammons* v. *Watkins*, *supra,* the complaint showed affirmatively the bank was incorporated before 1912, and that its charter had the provision above referred to, and that defendant's stock was part of the original issue or a transfer thereof. The demurrer therefore properly raised the question in that case as to whether or not the holders of such stock were liable for such double assessment under the Constitution. In the case at bar the complaint does not show the date of incorporation of the Bank of Winslow, or that the charter contained the provision relied on in the cases just cited, nor does it contain any allegation as to when defendants' stock was issued to them. Since the general rule of law is that stockholders of banks are subject to the double liability set forth in the Constitution, we think any exception thereto is a matter of defense, and it is not necessary that the complaint should negative the exception. 31 Cyc. 109. For that reason the demurrer was properly overruled. Since, however, defendants Dagg and Burke did set up in

their answer that part of the stock owned by them was acquired in such a manner as on its face to bring it within the rule of *Hammons* v. *Watkins, supra,* the court erred in rendering judgment against them for an assessment on such stock, unless it be true that the matter which we shall now discuss took it out of the rule.

It appears from the record that the Bank of Winslow was first incorporated in 1910 under the laws of the Territory of Arizona. The capital stock was $25,000, and the private property of stockholders was declared to be exempt from liability for corporate debts. On January 31st, 1923, the articles of incorporation were amended, increasing the capital stock to $50,000, and on April 19th, 1924, they were again amended to increase the capital stock to $150,000. The par value of the stock was always $100. It is the contention of plaintiff that, by amending its articles of incorporation after the adoption of our Constitution, the bank as a matter of law subjected itself to all the provisions of the Constitution in regard to double liability of stockholders, both as to the original and the later issues of stock.

The bank charter is a contract between the corporation and the state which cannot be changed except by mutual consent. With such consent it may be changed in any particular. *Dartmouth College* v. *Woodward,* 4 Wheat. 518, 4 L. Ed. 629; *Hammons* v. *Watkins, supra.* The interest of the stockholder in the corporation arises out of a different contract, between each shareholder and the corporation, but it is equally protected. *Assaria State Bank* v. *Dolley,* 219 U. S. 121, 55 L. Ed. 123, 31 Sup. Ct. Rep. 189; *Avondale Land Co.* v. *Shook,* 170 Ala. 379, 54 South. 268. And no stockholder, against his consent, can be deprived of such protection. *American Printing House* v. *La. Board of Trustees,* 104 U. S. 711, 26 L. Ed. 902; *Citrus Growers* v. *S. R. V. W. U. Assn.,*

*ante,* p. 105, 268 Pac. 773. When the corporation was first organized, it contracted with the territory of Arizona that the property of its shareholders should not be liable for its corporate debts. The shareholders purchasing stock in the corporation took such stock with the law *as it then stood* as a part of their contract with the corporation. *Southern Surety Co.* v. *Oklahoma,* 241 U. S. 582, 60 L. Ed. 1187, 36 Sup. Ct. Rep. 692; *Morrell* v. *Phoenix,* 16 Ariz. 511, 147 Pac. 732. Under that law, existing shareholders were advised that the capital stock might be increased by the vote of a fixed percentage of the shareholders. They were equally advised, however, that no liability could ever be imposed upon them for the debts of the corporation, and their contract was made with both conditions a part thereof. When, therefore, the corporation in 1923 and 1924 increased the amount of the capital stock it was not a breach of the contract with the original shareholders, but rather in pursuance of such contract, and the contract between subscribers to the new stock and the corporation was governed by the law as it was when that contract was made. But, since an increased liability was not provided for by law when these shareholders first obtained their stock, such liability could not be imposed upon them without their consent, and mere acquiescence in what under the law they knew to be *permitted* by their original contract cannot be construed as acquiescence in something *forbidden thereby.* If the bank had surrendered its original charter and its stockholders, with full knowledge of their legal rights, had exchanged stock in the old corporation for that in a new one, they would, of course, have taken the new stock subject to all the liabilities imposed upon the new corporation at the time of its organization. *Garrett* v. *Reid-Cashion L. & C. Co., ante,* p. 245, 270 Pac. 1044. Such, however, was not the action taken in the present

case. There was not a reorganization, nor a consolidation with some other corporation under a new name. The original corporation continued in business changed only by an increase of the capital stock. It is urged that there was an agreement for consolidation of the Bank of Winslow with two other banks. What might have been the legal effect had that agreement been consummated we need not inquire. What was actually done was something very different, and it is the legal effect of the action taken and not of that contemplated which controls. We are of the opinion that in reason and common justice the double liability does not apply to stock originally issued before 1912 or to reissues thereof, although it does to stock authorized and first issued after such date.

We have been cited to several cases on this point. The leading one seems to be that of *Senn* v. *Levy*, 111 Ky. 318, 63 S. W. 776. In that case the court held that the double liability did apply. The facts, however, showed that the old corporation changed its name, called in all its old certificates of stock, and issued new certificates in the new name, and held itself out to the public under its new name. The court said:

"The change made by the amendment was a radical one. A corporation exists only in its corporate name and a change of name was an abandonment, not only of the corporate name, but of the corporation itself. The old creature was destroyed, and a new one sprang into existence, clothed with all the new powers, and charged with all the new responsibilities imposed by the statutes which gave it birth. [Citing cases.] When the stockholders of the old corporation accepted certificates of stock in the new concern they assented to, and acquiesced in, the amendment, and were thenceforth bound for all the liabilities of the new concern imposed upon it by law. Necessarily the liabilities and burdens are co-existent with the benefits and there is no difference in principle between a

reorganization and an amendment which accomplishes the same purpose. In both a new corporation is created, which is subject to laws in force at the date of its birth."

Without acceding to the proposition that the mere change in a corporate name necessarily creates a new corporation, we agree that, when a new corporation *is* created, it is subject to the laws in force at the date of its birth, but it would follow from the very statement that such is the case, that, when the old corporation continues with only a change authorized by the very law under which it was organized, such law governs rather than a later one. We hold, therefore, that, so far as any stock which was part of the original capital stock before the adoption of the Constitution in 1912, or a reissue thereof, is concerned, it is exempt from the double liability set forth in article 14, section 11, *supra,* but that any stock thereafter issued is subject to the constitutional liability.

The second point is that the court refused to make written findings of fact and conclusions of law. The requested findings cover several points. In view of the fact that the answer only alleged that two of the defendants owned first issue stock, it was not necessary that special findings be made as to when the others acquired their stock, since, as we have said, this is a matter of defense. It was error, however, for the court to refuse to make such findings so far as the stock of the defendants Dagg and Burke are concerned, since their answers distinctly raise the issue. The court should have found also the amount of dividend due each defendant from the bank. The other issues on which findings were requested but not made are immaterial.

The third point is that the degree of insolvency should have been determined by judicial proceedings before the institution of the suit on the stockholders' liability. It appears from the record that, when

plaintiff took possession of the Bank of Winslow, he reported the fact to the superior court of Navajo county, where, under section 49 of the Banking Code of 1922 (Laws 1922, chap. 31), all proceedings therein were identified thereafter as case No. 1865. The following order appears in the records of that case:

"The petition of A. T. Hammons, Superintendent of Banks of the State of Arizona, and *ex-officio* Receiver of the Bank of Winslow, an insolvent banking corporation, having been filed herein, praying for a decree of this court determining the said Bank of Winslow to be insolvent, and the court having designated Saturday, March 21st, 1925, at the court room of the court house, in Holbrook, Arizona, at the hour of ten o'clock in the forenoon of the said day as the time and place of hearing said petition and directing that notice be served upon the said Bank of Winslow, and that a copy of the said notice be mailed to each of the persons appearing of record on the books of the said Bank of Winslow as stockholders therein by registered mail by the Clerk of this Court more than 20 days prior to the said hearing and it appearing that the said notice has been served as aforesaid and the said hearing having regularly been continued from the above mentioned date to this 28th day of March, 1925, at the hour of ten o'clock in the forenoon, and the certain answers of various stockholders to the said petition having been stricken, and the court having heard the testimony of J. S. Dodson, Special Deputy Superintendent of Banks of the State of Arizona, in charge of the Bank of Winslow, and there being no further testimony offered or produced for or on behalf of any party, and the court being fully advised in the premises, on motion of Sapp and McLaughlin, attorneys for the petitioner,

"It is ordered, adjudged and decreed that the said Bank of Winslow, is insolvent, and was insolvent on October 4th, 1924.

"Dated this 28th day of March, 1925, in open Court."

Defendants rely on the opinion of this court in *Cowden* v. *Williams,* 32 Ariz. 407, 55 A. L. R. 1059,

259 Pac. 670. In that case the question was raised as to when a cause of action upon their constitutional double liability arose against the stockholders of insolvent banks. After considering all the cases, and reviewing the matter, we held as follows:

"The third method is by a judicial investigation and determination of the very matter in issue, to wit, the insolvency of the corporation *and the amount thereof*. This investigation and declaration may be made at any time after the receiver has taken charge, at his request or at that of a creditor or stockholder.

"It seems to us that the method last mentioned is the most logical and the one which best carries out the purpose of the constitutional provision, with the least injury to either stockholder or creditor. While the greater number of authorities accept the second method of determining the accrual of the cause of action, we think they are either based on the doctrine of primary liability, or else an application of the principle of secondary liability to the remedy only and not to the right. We therefore hold that the double liability of stockholders under the constitutional provision above set forth did not give rise to a cause of action until a judicial determination of the fact of insolvency, and necessarily the statute of limitations does not commence to run until then." (Italics ours.)

This decision was based on the theory, as we said in the case cited, that "the stockholder being only secondarily liable should not be called on to pay until it is definitely ascertained not only that there is a deficiency of assets which he must make up, but how much it is." Of course it is not necessary that it be ascertained exactly what the amount of the deficit is. It must appear, however, that it is at least so great that the assessment asked for in the suit against the stockholders will be necessary to cover it, for stockholders can only be required to pay enough to make up any deficit. In the present case there was a judicial determination of the fact of insolvency, but noth-

ing therein showed whether the assessment on the stockholders needed to be twenty-five, fifty or one hundred per cent of the par value of their stock. If the statute of limitations did not commence to run until the judicial determination of these two matters, then any action commenced before such determination would be prematurely brought, and that was the case herein. Of course, before any judgment can be rendered against the stockholders, they must be given a legal opportunity to contest both the insolvency of the bank and the amount thereof if they so desire. Whether that be done in the original proceedings to determine the insolvency and the amount thereof, or whether they may raise both issues in a suit against them as stockholders, is a matter of detail. So long as the opportunity is given them at some time to be heard, they cannot complain.

This point alone is sufficient to determine the result of the appeal, but, since a new suit may be brought, we think it well to consider some of the other questions raised, so that they may be properly determined in the trial court should they arise at a later date. The fourth point is that permission to institute the action should have been obtained from the superior court. Section 46 of the Banking Code of 1922 reads as follows:

"Sec. 46. Relations of Court and Superintendent of Banks When Acting as Liquidating Agent. When the affairs of any bank have come into the hands of the Superintendent of Banks for liquidation the relations between the Superior Court and the Superintendent of Banks shall be the same as the relations of the Superior Court and a receiver under the laws now existing, and the Superior Court shall have the same authority and jurisdiction over the Superintendent of Banks in such matters of liquidation as it would over receivers appointed by the Court unless in this Act otherwise provided."

The superintendent of banks, therefore, is under the same authority of the court as any other receiver, unless the statute otherwise provides. Section 23 of that Code, however, does provide that the superintendent of banks must enforce by an action in the superior court for the benefit of the creditors of such bank the double liability of stockholders. In view of this, we think no special permission from the court is required to authorize the superintendent of banks · to do the thing which he is specially commanded to do by statute.

Point 5 is that the stock certificate stub-book of the Bank of Winslow was erroneously accepted as sufficient proof that defendants were stockholders in the corporation. The court in the case of *Sigua Iron Co. v. Greene*, (C. C. A.) 88 Fed. 207, said (syllabus 4):

"In an action by a corporation to recover an assessment, entries of defendant's name in plaintiff's books as a stockholder are not *prima facie* evidence that he is such stockholder."

We fully agree with this general statement of the law. There are many excellent reasons therefor. It is sufficient, however, to say that the stubs of the stock certificate book could at most be a self-serving declaration made by an officer of the bank. As was well said in *Girard Life Ins. A. & T. Co. v. Loving*, 71 Kan. 558, 81 Pac. 200; "No attempt was made to show that the defendant knew of the existence of such entries and had acquiesced in them, or had authorized, sanctioned, confirmed or ratified them in any way, and no other circumstances were shown making the defendant privy to the entries."

A corporation may not make an individual a stockholder therein by merely issuing stock to him *unless he accepts it,* and certainly when an action is maintained to establish a liability on his part, based on his

membership in the corporation, there should be some evidence of the acceptance, as well as the issue.

We need not consider the sixth point in regard to the allowance to the defendants of dividends on their deposits as credits on any indebtedness they might have owed to the bank, as the court in its amended judgment accepted defendants' position on this point.

The judgment of the superior court of Navajo county is reversed, and the case remanded, with instructions to dismiss the action without prejudice, on the ground that it was prematurely brought.

ROSS, C. J., and McALISTER, J., concur.