[Civil No. 2819. Filed June 19, 1929.]

[278 Pac. 381.]

F. G. BRECHT, Appellant, v. A. T. HAMMONS, as
Superintendent of Banks for the State of Ari-
zona, and Ex-Officio Receiver of the COMMER-
CIAL TRUST & SAVINGS BANK, a Corpora-
tion, Appellee.

See Compromise and Settlement, 12 **C. J.**, sec. 1, p. 314, n. 1; sec. 17, p. 324, n. 22; sec. 19, p. 331, n. 47, 48; sec. 21, p. 333, n. 60; sec. 32, p. 337, n. 3.

Judgments, 34 **C. J.**, sec. 850, p. 551, n. 39; sec. 851, p. 553, n. 45; sec. 856, p. 555, n. 75.

Mr. R. B. Westervelt and Mr. J. E. Russell, for Appellant.

Mr. John A. Ellis, for Appellee.

LOCKWOOD, C. J.—Commercial Trust & Savings Bank, a banking corporation, hereinafter called the bank, was incorporated under the laws of the territory of Arizona in 1902, and conducted a banking business at Prescott, Arizona, from then until November, 1925, when it was closed and taken in charge for liquidation by A. T. Hammons, in his official capacity as superintendent of banks, hereinafter called appellee. F. G. Brecht, hereinafter called appellant, owned ninety-six and one-half shares of the capital stock of said bank at the time it was closed. Appellee obtained an order from the superior court of Yavapai county adjudging the bank to be insolvent to the extent of more than the entire capital stock outstanding, and then instituted suit No. 10,272 against appellant in said court for the collection of $9,650, alleged to be the latter's liability as a stockholder. Answer was filed and issue joined, and a trial had upon the law questions and facts, and appellee was awarded judgment for the $9,650. Thereafter appellee and appellant tentatively agreed upon a compromise of the judgment, and upon a full hearing before the court an order was made authorizing such compromise, and pursuant thereto appellee was paid by appellant the amount agreed upon, and the judgment aforesaid was duly satisfied of record.

The present action is a suit by appellant to recover back the money so paid to appellee. There was no dispute as to the facts, and the matter being submitted to the court, judgment was rendered in favor of defendant, appellee herein, and the matter was brought before us for review. There are three assignments of error, the vital legal questions raised

on the record being whether or not the judgment above referred to is void, and therefore subject to a collateral attack, or merely erroneous and voidable, and if it is void, whether the compromise is valid or not. Appellant's position, briefly stated, is as follows:

Suit No. 10272 referred to above was brought on the theory that there was due from appellant to appellee a certain sum of money by virtue of his stock in the bank, and the provisions of article 14, section 11, Constitution of Arizona, which reads as follows:

"The shareholders or stockholders of every banking or insurance corporation or association shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such corporation or association, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares or stock."

After the judgment and compromise above described, this court held, in the cases of *Hammons* v. *Watkins*, 33 Ariz. 76, 262 Pac. 616, and *Herndon* v. *Hammons*, 33 Ariz. 88, 262 Pac. 620, that stockholders of banks whose capital stock was issued prior to statehood, and whose charters contained a provision exempting them from any liability for the debts of the corporation, were not subject to the double liability set forth in article 14, section 11, *supra*. It is contended that, since under the law laid down in the decisions just cited no liability existed as against appellant on his stock, the court was without jurisdiction of the subject matter in the suit above described, and that therefore the judgment is absolutely void, and subject to a collateral attack; that a void judgment is no consideration for a compromise, and such being the case, appellee being an officer of the court, and the money therefore constructively, at least, in the possession of the court,

in equity and good conscience the money paid him by appellant should be repaid.

We will consider first whether the judgment in question was void or merely erroneous. Three things must concur or a judgment is void upon its face, and may be attacked at any time. The court must have (a) jurisdiction of the subject matter of the case, (b) jurisdiction of the persons involved in the litigation, and (c) jurisdiction to render the particular judgment given. If these three matters concur, even though the judgment be erroneous or wrong, so that it could be reversed on appeal or set aside on direct attack, it is not void as against collateral attack. In the case at bar there can be no question but that the trial court had jurisdiction of the persons of the parties, and jurisdiction to render the particular judgment which it did. The question is as to the jurisdiction of the subject matter. The action was one given, not by a provision of the common law, but, if at all, by the constitutional provision above quoted. If it falls within such provision, the court had jurisdiction of the subject matter—if not, not. On the one hand, we are met with the contention that if judgments, where there is an honest difference of opinion when they are rendered as to what the law is, may be attacked at a later date as being absolutely void, there is never any certainty or finality to a judgment. On the other hand, it is urged that it would be a travesty on justice to allow a judgment to stand which the highest authority had decided was based upon an alleged right which on the undisputed facts did not and which never *could* exist.

We think the true rule is as follows: When a question as to the jurisdiction of the subject matter is raised, the court must, of course, primarily determine its own jurisdiction. If its conclusion requires the actual or implied decision of a question of fact, then a determination necessarily based on that fact to the

effect that the court has jurisdiction is conclusive as against collateral attack. When, however, the facts are admitted in the pleadings, and the court's determination is based upon an error as to the law arising out of the admitted state of facts, its decision is not conclusive, and the judgment, in case the decision was in error, is subject to collateral attack. *Grannis* v. *Superior Court,* 146 Cal. 245, 106 Am. St. Rep. 23, 79 Pac. 891; *Farmers' & Merchants' Bank* v. *Board of Equalization of Los Angeles, etc.,* 97 Cal. 318, 32 Pac. 312; *In re Grove Street,* 61 Cal. 438; *Cahill* v. *Superior Court,* 145 Cal. 42, 78 Pac. 467; *Arroyo D. & W. Co.* v. *Superior Court,* 92 Cal. 47, 27 Am. St. Rep. 91, 28 Pac. 54. Let us apply this rule to the case at bar.

Under our decisions in *Herndon* v. *Hammons,* and *Hammons* v. *Watkins, supra,* the Constitution gave an action for the recovery of stockholders' liability when the bank had been incorporated after statehood, but no action was given against the stockholders of banks incorporated before that time with suitable charter exemptions, and no action of the kind existing, no court could have jurisdiction to try one. If the trial court had found as a matter of fact that the bank in question was incorporated after 1913, or that the stock owned by appellant was of an issue originally authorized after that time, then such finding would on its face have brought the subject matter of the action, under the Constitution, within the jurisdiction of the superior court, and the judgment of the court, however erroneous, would have been conclusive as against collateral attack. Or, had the pleadings in the suit failed to show affirmatively the lack of jurisdiction, the usual presumptions in favor of the court's findings would have followed, and the judgment would have been voidable, at most.

It appears, however, from the record in this case that the complaint and answer in case No. 10272,

*supra,* both show the date of the incorporation of the bank and the charter exemption, and that the stock was issued before statehood. There was no issue of fact for the trial court to determine on that point, and its conclusion that it had jurisdiction was one of law alone, and since the face of the record shows affirmatively that the court did not and could not have jurisdiction of the subject matter of the case, the judgment was void, and not merely voidable.

What, then, is the effect of the compromise of a void judgment? A "compromise" may well be defined as follows: An agreement between two or more persons who, for the purpose of preventing or putting an end to a lawsuit, adjust their differences by mutual consent in the manner which they agree on, and which any one of them prefers to the hope of gaining, balanced by the danger of losing. Under this definition the settlement of a *bona fide* dispute, or a doubtful claim, if made fairly and in good faith, is a sufficient consideration for a compromise based thereon. 12 C. J. 324, and note. And the real consideration which each party receives is not so much the sacrifice of the right, as the settlement of the dispute. *Hennessy* v. *Bacon,* 137 U. S. 78, 34 L. Ed. 605, 11 Sup. Ct. Rep. 17; *Heath* v. *Potlatch Lumber Co.,* 18 Idaho 42, 27 L. R. A. (N. S.) 707, 108 Pac. 343. As is said in *Smith* v. *Farra,* 21 Or. 395, 20 L. R. A. 115, 28 Pac. 241:

"The settlement of a controversy is valid and binding, not because it is the settlement of a valid claim, but because it is the settlement of a controversy. And when such settlement is characterized by good faith, the court will not look into the question of law or fact in dispute between the parties, and determine which is right. All that it needs to know is, that there was a controversy between the parties, each claiming in good faith rights in himself against the other and that such controversy has been settled."

Of course, the surrender of a claim which is known to be entirely without foundation either in law or at equity does not afford a sufficient consideration for a compromise. 12 C. J. 328. This does not mean, however, that the parties shall have settled the controversy as the law would have done, and it is immaterial upon which side the right ultimately proves to be. According to the great weight of authority, it is sufficient to support a compromise that there be an actual controversy between the parties of which the issue fairly may be considered by both parties as doubtful, and that at the time of the compromise they in good faith so considered it. It is not essential that the question be in fact doubtful in legal contemplation. *Roane* v. *Union Pacific Ins. Co.*, 67 Or. 264, 135 Pac. 892; *Belt* v. *Lazenby*, 126 Ga. 767, 56 S. E. 81; *Sunset Orchard Land Co.* v. *Sherman Nursery Co.*, 121 Minn. 5, 140 N. W. 112; *Fontaine* v. *Davis & Powell*, (Tex. Civ. App.) 164 S. W. 386. Where parties settle a dispute upon a legal question, the fact that there was in truth no actual doubt about the law will not render such settlement nugatory. The fact that the point which was compromised could have been decided only one way under the facts in the case is no ground for repudiating the compromise. *Connor* v. *Etheridge*, 3 Neb. (Unof.) 555, 92 N. W. 135.

Since settlements of disputed matters and compromises of unsettled claims are favored by the law, they are not usually interfered with. There are cases, indeed, when a court of equity will set aside or correct such agreement on proper averment. They will not, however, be set aside merely because of a mistake as to the law, unless it appears that the other party was in some way instrumental in producing the result, and where the parties have regarded a legal question as doubtful and based a compromise thereon, the fact that there is a later judicial determination against the validity or value of the rights involved will not justify

rescinding the settlement. *Bofinger* v. *Tuyes,* 120 U. S. 198, 30 L. Ed. 649, 7 Sup. Ct. Rep. 529.

In the case at bar there is no question that there was an honest difference of opinion as to the validity of appellee's claim in case No. 10272. The matter was bitterly contested from every conceivable angle in the superior court. Appellant was represented by able counsel at all stages of the case, and was fully advised as to his rights in the premises. Under these circumstances he was so doubtful of his ability to reverse the judgment against him in this court that he chose to compromise the matter rather than bring it before us on appeal. When the precise question of law finally reached us in two other cases, they were also most thoroughly presented, and earnestly argued by the respective counsel, and this court devoted much time and labor to a proper determination of the case. The point was certainly one upon which litigants and counsel might well have held different opinions. Appellant, in order to secure himself against further annoyance by attempts to collect the judgment rendered against him determined it would be wiser to compromise his case. There was, and is, no suggestion of any fraud, undue influence, or misrepresentation by appellee. Under these circumstances, by the overwhelming weight of authority, notwithstanding that at a later time in another suit it was determined that no liability on the part of defendant as a matter of fact existed, he cannot now claim that the compromise which he entered into in good faith should be set aside. It is unfortunate for appellant individually that the law is as it is, but a holding to the contrary would make compromises of litigation almost impossible.

The judgment of the superior court of Yavapai county is affirmed.

McALISTER and ROSS, JJ., concur.